SAGE ET AL. *v.* CENTRAL RAILROAD COMPANY OF IOWA ET AL.

1. To make a *nunc pro tunc* order effectual for the purposes of a *supersedeas*, it must appear that the delay was the act of the court, and not of the parties, and that injustice will not be done.
2. A motion to set aside a decree, made by persons not parties to the suit, but who are permitted to intervene only for the purpose of an appeal from the decree as originally rendered, will not operate to suspend such decree.
3. Their separate appeal having been properly allowed and perfected, the case is here to the extent necessary for the protection of their interests.
4. A cause, involving private interests only, will not be advanced for a hearing in preference to other suits on the docket.

MOTION, 1. To vacate a *supersedeas;* 2. Dismiss the appeal. *Mr. R. L. Ashhurst* in support of the motions. *Mr. N. A. Cowdrey,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The Farmers' Loan and Trust Company, trustee for the bond-holders secured by a mortgage of the Central Railroad Company of Iowa, whose claims amounted in the aggregate to $3,700,000, exclusive of interest, commenced a suit in the Circuit Court of the United States for the District of Iowa, Oct. 14, 1874, to foreclose the mortgage for the benefit of all parties interested in the security.

This was done at the request of a large number of the bond-holders, and after much consultation between them in regard to their common interests. After the cause had been pending for nearly a year, and at some time between Oct. 1 and Oct. 22, 1875, Russell Sage, F. Leake, James Buell, and Edwin Parsons, presented a communication to the trustee, a copy of which is as follows : —

" *To the Farmers' Loan and Trust Company, Trustee, &c., First Mortgage Bondholders.*

" GENTLEMEN, — We are informed by your counsel, Grant and Smith, that they will ask the court, in the foreclosure suit now pending, to enter such decree as the majority of the bondholders desire. Believing that some of the bondholders have other interests to serve than to protect the first mortgage bondholders, and that large numbers of the bondholders, from want of proper information, have been induced to sign various requests to the court for certain forms of decree injurious to us as bondholders, and being your *cestui que trust* to the amount set opposite our names of the first mortgage bonds, to secure the payment of which you hold the mortgage as trustee for ourselves and others similarly situated, this is to notify you of such interest on our part, and to request you to instruct your counsel to procure the ordinary decree of foreclosure and sale; and, failing to get this from the court, to take an appeal to the Supreme Court of the United States.

" If, for any reason, you decline to give your counsel such instructions, please inform us, that we may become a party to said proceedings, and take such course as we may be advised in the matter. We understood the trust-deed to require you to procure the ordinary decree of foreclosure and sale. If the bondholders, or a majority of them, request you to purchase the mortgaged premises, and to form a new company, that it is competent for you to do so, upon such terms and conditions as a majority of the bondholders desire;

but, until you do so purchase, you are to do all you reasonably can be expected to do to protect the minority as well as the majority of your *cestui que trust.*

"Respectfully, your obedient servants,

"RUSSELL SAGE, $100,000.

"F. LEAKE, by Russell Sage, $25,000.

"JAMES BUELL, $10,000.

"EDWIN PARSONS, $13,500.

"NEW YORK, Oct. 1, 1875."

A term of the court commenced Oct. 11, 1875; and on the 22d of that month, the Farmers' Loan and Trust Company, the Central Railroad Company of Iowa, and all the other defendants, together with committees of various bondholders, represented by their respective attorneys, appeared in court and agreed to the form of a decree to be entered in the cause, the same having been the result of consultation and compromise among the parties in interest. At the same time the Farmers' Loan and Trust Company exhibited to the court the communication it had received from Sage and his associates, accompanied by a statement that Buell had deposited with it as trustee $10,000 of bonds secured by the mortgage, Leake, $25,000, and Sage, $100,000, and that it was ready to execute any decree which might be made by the court under the circumstances. The court thereupon, without considering the rights and interests of the various parties, entered, Oct. 22, 1875, the decree agreed upon, and then adjourned until some time in January, 1876.

Down to this time neither Sage nor any of his associates had asked to be made parties to the suit, or to be permitted to intervene in any manner for the protection of their interests, but, Dec. 16, 1875, Sage, Buell, and N. A. Cowdrey presented to the circuit judge, at St. Paul, Minn., the Iowa Circuit Court not being then in session, a petition, as follows: —

"Now comes the Farmers' Loan and Trust Company, as trustee in said cause for Russell Sage, James Buell, and N. A. Cowdrey, and plaintiff in said cause, and prays of the court that an appeal may be allowed to said plaintiff, and tenders to the court an appeal-bond, with a request that the same may operate as a *supersedeas.*" Signed, Farmers' Loan and Trust Company, by Grant and Smith, solicitors.

Upon this petition, the circuit judge entered his order, as follows : —

"In this case, an appeal is asked by the complainant so far, and only so far, as it affects the interests of Russell Sage, James Buell, and N. A. Cowdrey.

"I deny the appeal prayed for, because, —

"1. The decree in question was entered by consent of all the parties in interest.

("The term at which this decree was rendered has not yet ended, but stands adjourned until in January next; and the proper course for the parties in whose behalf an appeal is sought is for them to appear, and, if the decree is erroneously entered, or is improper, to apply to be made parties, or to have the decree corrected, or a new decree entered.)

"2. An appeal cannot be taken on behalf of certain bondholders, not parties to the record, leaving the rest of the decree unappealed from. As the trustees (complainants) do not ask for an appeal from the whole decree, I need not consider when they would be justified in a case where there are several millions of dollars of bondholders who acquiesce in the decree, to appeal at the instance of three bondholders who only claim to hold bonds to the extent of $200,000.

"3. If an appeal could be allowed, as asked for, the bond offered is insufficient, as to amount, to secure costs, damages for delay, and costs and interest on the appeal. The clerk will enter the above order of record, denying the appeal prayed for.

"(Signed)        John F. Dillon, *Circuit Judge.*

"At Chambers, St. Paul, Dec. 16, 1875."

The court met pursuant to adjournment, and, Jan. 11, Sage, Buell, and Cowdrey, claiming to be the owners of $200,000 of the bonds secured by the mortgage, filed their petition for leave to intervene in the suit as plaintiffs or defendants, to the end that they might have opportunity to protect the interests they had in common with the other holders of bonds, and with liberty to appeal to this court. Jan. 13, they filed a motion to set aside the decree of Oct. 22.

On the next day, Jan. 14, the cause came on for hearing upon the motion filed Jan. 13, the petition filed Jan. 11, and the petition presented to the circuit judge Dec. 16, with his order thereon. The motion to set aside the decree was

denied, and as to the other petition the following order was made : —

"Upon consideration of the premises, it is now by the court ordered, that Sage, Buell, and Cowdrey be, and they are hereby, permitted to become so far parties to the suit as to prosecute, if they so elect, for the protection of their said several interests therein, and in their own names, an appeal to the Supreme Court from the decree entered herein on the twenty-second day of October, 1875 ; and, if said Sage, Buell, and Cowdrey desire said appeal to operate as a *supersedeas*, the bond for that purpose is fixed at the sum of $1,000,000, to be given in thirty days from this date; and, if so given, said appeal shall be regarded as taken and perfected on the sixteenth day of December, 1875, the said parties having then applied as aforesaid for said appeal, and having delayed the same until this time by order of the judge at chambers, as above shown; but if said appeal is not to operate as a *supersedeas*, the bond is fixed at the sum of $2,000."

No bond was executed under the authority of this order, and, Feb. 16, 1876, a petition for the allowance of an appeal from the orders and decrees of Oct. 22 and Jan. 14, to operate as a *supersedeas*, was presented to Mr. Justice Miller, the justice of this court assigned to the eighth circuit, in which the district of Iowa is situated; and he allowed the appeal as prayed for, and accepted a *supersedeas* bond in the sum of $20,000. In due time the transcript of the record was filed in this court, and the appeal docketed.

The Farmers' Loan and Trust Company, represented by a joint committee of the bondholders, now move, 1. To vacate the *supersedeas*; and, 2. To dismiss the appeal.

1. As to the *supersedeas*.

In *Kitchen* v. *Randolph*, *supra*, 86, we held that it was not within the power of a justice of this court to grant a *supersedeas* on a writ of error or upon an appeal, unless the writ of error was sued out and served or the appeal taken within sixty days, Sundays exclusive, after the rendition of the judgment or decree complained of.

The decree in this case was rendered Oct. 22, 1875. At that time, the present appellants were not parties to the suit, and consequently could not appeal. The application of Dec. 16,

though made in their interest, was in form by the Farmers' Loan and Trust Company. This application was denied; and properly so, because an appeal was only asked so far as it affected the interests of these appellants. The trustee represents all the bondholders; and as the decree is indivisible, it must appeal for the whole, or none. No application was then made by the appellants for leave to intervene and become parties, and consequently the court could not then have been asked to allow them an appeal as parties. Such an application was, however, made Jan. 11; and Jan. 14 they were admitted as parties for the purpose of appealing. An appeal was then allowed to them; but they did not avail themselves of it, either by giving a *supersedeas* bond or a bond for costs. And if they had done so, it could not have had the effect of a *supersedeas*, because it was not allowed until after the expiration of the sixty days. The order of the court, to the effect that if the bond should be given the appeal might be regarded as taken and perfected Dec. 16, was of no effect for the purposes of a *supersedeas*. While it is true that the court may enter an order in a cause *nunc pro tunc*, where the action asked for has been delayed by or for the convenience of the court (*Perry* v. *Wilson*, 7 Mass. 394), it is never done where the parties themselves have been at fault (*Fishmongers' Company* v. *Robertson*, 3 Man., Gr. & S. 974), or where it will work injustice.

A *supersedeas* is a statutory remedy. It is only obtained by a strict compliance with all the required conditions, none of which can be dispensed with. *Hogan* v. *Ross*, 11 How. 297; *Railroad Co.* v. *Harris*, 7 Wall. 575. Time is an essential element in the proceeding, and one which neither the court nor the judges can disregard. If a delay beyond the limited time occurs, the right to the remedy is gone, and the successful party holds his judgment or decree freed and discharged from this means of staying proceedings for its collection or enforcement. This is a right which he has acquired, and of which he cannot be deprived without due process of law. The court can no more give effect to a *supersedeas* by ordering that the appeal shall relate back to a time within the sixty days, than it can to an appeal taken after the expiration of two years, by

dating it back to a time within the limitation. To make a *nunc pro tunc* order effectual for such purposes, it must appear that the delay was the act of the court and not of the parties, and that injustice will not be done.

A slight examination of the facts in this case will be sufficient to show that the failure to take this appeal in time is attributable entirely to the parties. They knew, more than twenty days previous to the entry of the decree, that there was a conflict of interest between them and a large majority of the bondholders, and that the trustee had been asked to have a decree entered such as those opposed to them desired. Instead of seeking to be made parties to the suit at that time, or during the first eleven days of the term and before the decree was entered, they contented themselves with a notice to the trustee and a demand upon it to procure such a decree as they required, and, if that could not be done, to appeal. This, too, when they knew that they had only $200,000 out of $3,700,000 of the secured bonds. After the decree was entered, they delayed any application to the court for leave to intervene for the protection of their own interest until after an adjournment to a remote day had taken place. Then delaying, until near the expiration of the sixty days, they caused the trustee to apply for leave to appeal, so far as their interests were affected, when it must have been apparent that such an order could not have been made. Even then they filed no application to be made parties so that they might appeal for themselves, but delayed all action in that behalf until long after the time when a *supersedeas* could be had as a matter of right. All this was the act of the parties, and not of the court.

It is claimed, however, that the motion filed by the appellants Jan. 13, to set aside the decree, operated to suspend the decree, and that under the authority of *Brockett* v. *Brockett*, 2 How. 238, they had until sixty days after their motion was denied to perfect an appeal and obtain a *supersedeas*. But there is an essential difference between that case and this. In that, the motion was made by parties to the suit. The motion was one that could be made without leave, and it was entertained. The cause was referred to a master upon this motion. Under such circumstances, the court held that the decree did

not become final until the motion for rehearing was decided. Here, however, the movers were not parties to the suit. They had no right to intervene, except upon leave ; and this was refused. Under such circumstances, it is clear that the decree was not suspended in whole or in part by their motion. The appellants were permitted to intervene, but only for the purpose of an appeal. It would have been within the power of the court to set aside the old decree and enter it over again ; but this was refused. Leave only was granted to appeal from the decree as originally rendered.

No, *supersedeas* can follow from the appeal allowed by Mr. Justice Miller, because that clearly took effect after the expiration of the sixty days from the date of the decree. Neither can the order of the same justice have the effect of the allowance of a *supersedeas* on the original appeal, because, as has already been shown, that appeal was not taken in time.

From this it follows that the motion to vacate the *supersedeas* must be granted.

2. As to the appeal.

The appellants, by the order of Jan. 14, became parties to the suit for the purposes of an appeal. This order, having been made at the same term in which the decree was entered, was within the power of the court; and although it does not appear whether they were admitted as plaintiffs or defendants, it was sufficient to enable them to prosecute an appeal for the protection of their interests. Under this authority their appeal has been allowed and perfected. Whether- this brings up the whole of the case, or only a part, it is not necessary now to consider. It is clear that these parties have been allowed their appeal; and that the case is here to the extent that is necessary for the protection of their interests. It is their separate appeal within the rule as to the form in which a severance may be obtained, which is laid down in *Masterson* v. *Herndon*, 10 Wall. 416. The motion to dismiss the appeal is, therefore, denied.

Both the appellants and the appellees ask to have the cause advanced for a hearing, but, as only private interests are involved we see no reason why it should have preference over other suits upon the docket. This motion also is denied.

Mr. Justice Miller, with whom concurred Mr. Justice Field, dissenting.

I dissent from this opinion.

I think the Circuit Court, under the circumstances of the case, had a right to treat the application of appellants for appeal as having been made when they asked liberty to use the name of their trustee for that purpose; and it was rightfully allowed by the Circuit Court as of that date. If this be so, it is not denied that the bond approved by me would operate as a *supersedeas.*