SANBORN v. BAY.

(Circuit Court of Appeals, Eighth Circuit. December 11, 1911.)

No. 3,660.

1. EXCEPTIONS, BILL OF (§ 32*)—DISQUALIFICATION TO ACT—"DISABILITY."

Under Rev. St. § 953, as amended by Act June 5, 1900, c. 717, § 1, 31 Stat. 270 (U. S. Comp. St. 1901, p. 696), which provides that in case the judge before whom a cause is tried in a federal court is, "by reason of death, sickness or other disability," unable to hear and pass upon a motion for new trial and allow and sign a bill of exceptions, such bill may be allowed and signed by the judge who succeeds him or any other judge of the court in which the cause was tried holding such court thereafter, the appointment of the District Judge before whom a cause was tried in a Circuit Court to be a Circuit Judge to serve in the Commerce Court and his acceptance of such appointment creates a "disability," which disqualifies him while so serving from allowing a bill of exceptions in such cause, and it may properly be allowed and signed by another judge appointed or designated temporarily to preside in such court.

[Ed. Note.—For other cases, see Exceptions, Bill of, Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 3, pp. 2079–2081; vol. 8, p. 7638.]

2. APPEAL AND ERROR (§ 460*)—SUPERSEDEAS—FEDERAL COURTS—TIME FOR OBTAINING.

Under Rev. St. § 1007 (U. S. Comp. St. 1901, p. 714), which provides that in cases where a writ of error may be a supersedeas a defendant may obtain such supersedeas by serving the writ of error within 60 days "after the rendering of the judgment complained of, and giving the security required by law," a judgment does not take final effect for the purposes of a writ of error, where the court entertains a motion for new trial, until such motion has been disposed of, and the writ may be served and filed and the supersedeas obtained within 60 days thereafter. Nor is such right affected by the fact that the party has not applied for a stay of execution for 42 days in which to file his motion for new trial as allowed by Rev. St. § 987 (U. S. Comp. St. 1901, p. 708), nor because his motion was not filed within that time if filed during the term at which the judgment was rendered; such section having no reference to appellate proceedings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2217–2245; Dec. Dig. § 460.*

Finality of judgments and decrees for purposes of review, see notes to Brush Electric Co. v. Electric Improvement Co. of San Jose, 2 C. C. A. 379; Central Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

Reed, District Judge, dissenting in part.

In Error to the Circuit Court of the United States for the District of South Dakota.

Action at law by Ella R. Bay against James S. Sanborn. Judgment for plaintiff, and defendant brings error. On motion to suppress bill of exceptions, dismiss writ of error, and vacate the supersedeas. Motions denied.

See, also, 189 Fed. 521.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Joe Kirby, for the motion.

C. P. Bates and E. R. Winans, opposed.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. [1] This case was tried and judgment rendered on November 1, 1910, at the October term of the Circuit Court for the District of South Dakota, by Carland, then District Judge for that district. After Judge Carland's appointment as Circuit Judge and designation to serve a term in the Court of Commerce, Judge Willard, the District Judge for the District of Minnesota, was by order of the senior Circuit Judge of this circuit designated and appointed to act as District Judge for the District of South Dakota until the appointment and qualification of Judge Carland's successor. On March 24, 1911, at the instance of the plaintiff in error, Judge Willard, who was then presiding in the Circuit Court pursuant to his designation and appointment, allowed and signed a bill of exceptions in this case which both parties had agreed to as correct.

It is now claimed that Judge Willard had no power to perform those acts, and a motion is made to suppress the bill of exceptions and dismiss the writ of error.

Section 953 of the Revised Statutes provides that:

"A bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat on the trial of the cause."

By an act approved June 5, 1900 (31 Stat. 270 [U. S. Comp. St. 1901, p. 696]), that section was amended by adding the following:

"And in case the judge before whom the cause has heretofore been or may hereafter be tried is, by reason of death, sickness, or other disability, unable to hear and pass upon the motion for a new trial and allow and sign the bill of exceptions, then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such cause has been or is taken in stenographic notes, or if the said judge is satisfied by any other means that he can pass upon such motion and allow a true bill of exceptions, shall pass upon said motion and allow and sign such bill of exceptions; and his ruling upon such motion and allowance and signing of such bill of exceptions shall be as valid as if such ruling and allowance and signing of such bill of exceptions had been made by the judge before whom such cause was tried. ※ ※ ※ "

Was there any such disability on the part of Judge Carland as authorized his successor, Judge Willard, to sign and allow the bill of exceptions in question?

When Judge Carland was appointed and confirmed Circuit Judge and accepted the position, he ceased to be District Judge of the court over which he presided when this case was tried. This seems to be conceded. The only question is: Did he by becoming a Circuit Judge retain the jurisdiction which before that time he had over the case? By the act approved June 18, 1910 (chapter 309, 36 Stat. pt. 1, p. 539) the Court of Commerce was created. The President was

authorized, by and with the advice and consent of the Senate, "to appoint five additional Circuit Judges * * * who shall hold office during good behavior and who shall be from time to time designated and assigned by the Chief Justice of the United States for service in the Circuit Court for any District, or Circuit Court of Appeals for any Circuit or in the Commerce Court."

These judges were, in the first instance, to constitute the new Court of Commerce for terms from one to five years each respectively. They were not appointed to be Circuit Judges of any particular circuit. On the contrary, they were appointed to be Circuit Judges, subject to assignment from time to time by the Chief Justice for service either in some Circuit Court, some Circuit Court of Appeals, or in the Court of Commerce. It does not appear that Judge Carland has ever been assigned for service in the Circuit Court for the District of South Dakota, and certainly it does not appear that he had been so assigned prior to March 24, 1911, when Judge Willard allowed and signed the bill of exceptions in this case.

We therefore conclude he then had no power to act judicially in any matters pending or requiring consideration in the court over which he formerly presided; and inasmuch as the allowance and signing of the bill of exceptions is a judicial act (Malony v. Adsit, 175 U. S. 281, 20 Sup. Ct. 115, 44 L. Ed. 163), he had no power to allow or sign it in this case.

The remaining question is: Did this want of power or disqualification amount to a "disability" within the meaning of the act of June 5, 1900, which enabled Judge Willard, his actual successor, to allow and sign the bill of exceptions in this case? The latter was authorized and empowered to do so only in case the judge who tried the case was "by reason of death, sickness or other disability unable to allow and sign the same." It is contended by defendant in error that the "other disability" here referred to means a disability of like character to that arising from "death or sickness" which immediately precede the words "other disability," and they cite the case of American Bonding & Trust Co. of Baltimore v. Takahashi, 49 C. C. A. 267, 111 Fed. 125, in support of their contention. This case involved the question whether the casual or temporary absence of the trial judge from his circuit authorized a judge, assigned to aid or assist him, to allow and sign a bill of exceptions in a case tried before the regular judge himself. It was held in that case that such casual absence did not amount to the "disability" contemplated by the amended act of June 5, 1900, and some expressions are found in the opinion sustaining the contention of the defendant in error in this case. While we might well agree with the conclusion reached in that particular case, we cannot think the act of 1900 was intended by Congress to limit the "disqualification" referred to, to one occasioned by physical or mental ailment. This in our opinion would be too narrow a construction. It would not seem to accomplish the legislative purpose or afford the relief which Congress intended to afford by the language actually employed. Inability to perform duty occasioned by death or sickness was obviously not the only disability

Congress had in mind. It employed a comprehensive term sufficient to cover all disqualifications, and we do not think the artificial rule noscitur a sociis invoked by counsel was ever intended to be employed to thwart an obvious purpose. Nothing in fact could create a more effective "disability" than an utter disqualification of the presiding judge to perform the act which Congress attempted to provide for. We accordingly hold that a voluntary resignation of his office (which is practically the situation in this case) by a trial judge is an effective disqualification within the meaning of the act of 1900.

[2] There is also a motion here to vacate the supersedeas claimed to have been obtained by the bond given on securing this writ of error. A judgment for $25,000 was rendered against the defendant at the October term of the court, on November 1, 1910. At no time thereafter did the defendant invoke the provisions of section 987, Rev. Stat., to secure a stay of execution for 42 days as therein provided, to enable him to file and present a petition for a new trial. On the contrary, he sought and secured a stay of execution for 60 days to enable the parties, in the language of the order, "to settle their bill of exceptions." This stay was extended from time to time for the same expressed purpose until April 1, 1911. The bill of exceptions was allowed, signed, and filed on March 24th, and on March 25th a motion for a new trial was filed, and this was overruled on April 1, 1911, prior to the expiration of the October term. On April 17, 1911, at the next or April term of the court, the writ of error was sued out and a bond in the penal sum of $30,000 given to supersede the execution of the judgment until a hearing could be had in this court. Does this bond so given operate as a supersedeas of the judgment?

Section 1007, Rev. Stat. (U. S. Comp. St. 1901, p. 714), provides that if a proper bond be given on appeal perfected or writ of error sued out and served within 60 days "after the rendering of the judgment complained of," a supersedeas may be had. Kitchen v. Randolph, 93 U. S. 86, 23 L. Ed. 810; Logan v. Goodwin, 41 C. C. A. 573, 101 Fed. 654. If, therefore, the overruling of the motion for a new trial was the "rendering of the judgment complained of" within the meaning of section 1007, then as the writ of error, accompanied with the proper security, was sued out and duly served within 60 days thereafter, the supersedeas must stand.

It is a well-settled general rule that all orders, judgments, and decrees of federal courts are under the control of the court which rendered them during the term at which they were rendered and may be at any time during that term set aside, vacated, modified, or annulled by the court. Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797. For many purposes the overruling of a motion for a new trial is the expression of the final judgment of the court in a given case, and when such a motion is entertained there is no final judgment in the case until it is disposed of.

In Brockett v. Brockett, 2 How. 238, 11 L. Ed. 251, the trial court had rendered a decree against the defendants, and afterwards, dur-

ing the same term, had entertained a motion to open it up for a certain purpose. Within 10 days after the denial of this motion, but not within 10 days after the first entry of the decree, the defendant perfected his appeal to the Supreme Court and gave the required bond. Mr. Justice Story, in speaking for the court on a motion to dismiss the appeal, said:

"Now, the argument is that, as the original final decree was rendered more than one month before the appeal, it could not operate under the laws of the United States as a supersedeas, or to stay execution on the decree, because to have such an effect the appeal should be made and the bond should be given within ten days (as the law then stood) after the final decree. But the short and conclusive answer to this objection is that the final decree of the 10th of May (when it was originally entered) was suspended by the subsequent action of the court; and it did not take effect until the 9th of June (when the court acted on the motion to open up), and that the appeal was duly taken and the appeal bond given within 10 days from this last period."

Railroad Co. v. Bradley, 7 Wall. 575, 19 L. Ed. 274, was before the Supreme Court on a motion for a supersedeas. The motion was made, during the term at which a decree· was rendered to rescind that decree, and this motion was entertained, heard, and denied. The Supreme Court, speaking by Chief Justice Chase, said:

"There is no doubt that, during the term, the decree was, at all times, subject to be rescinded or modified, upon motion, and could not, therefore, be regarded as absolutely final until the end of the term. It became final, in this case, when the motion to rescind had been heard and denied. This took place on the 13th of March, and on the 20th the appeal was prayed in open court, and on the 23d the bond on appeal was approved and filed. We think this was in time, and the motion for supersedeas must therefore be allowed."

In Memphis v. Brown, 94 U. S. 715, 24 L. Ed. 244, the Supreme Court, deciding a motion to vacate a supersedeas, said:

"Under the ruling in Brockett v. Brockett, 2 How. 241 [11 L. Ed. 251], the motion made during the term to set aside the judgment of March 2d suspended the operation of that judgment, so that it did not take final effect for the purposes of a writ of error until May 20th, when the motion was disposed of."

In Texas Pacific Railway Co. v. Murphy, 111 U. S. 488, 4 Sup. Ct. 497, 28 L. Ed. 492, a motion was submitted to the court to dismiss a writ of error and vacate a supersedeas because the writ of error was not sued out and served within 60 days after the first entry of the judgment; a petition for rehearing having afterwards been ·made, entertained, and denied by the court. The Supreme Court, speaking by Chief Justice Waite, said:

"It was expressly ruled in Brockett v. Brockett, which has been followed in many cases since, that if a petition for rehearing is presented in season and entertained by the court, the time limited for an appeal or writ of error does not begin to run until the petition is disposed of."

In Aspen Mining & Smelting Co. v. Billings, 150 U. S. 31, 36, 14 Sup. Ct. 4, 6 (37 L. Ed. 986), the Supreme Court, speaking again on this question, said:

"The rule is that if a motion or a petition for rehearing is made or presented in season and entertained by the court, the time limited for a writ of error or appeal does not begin to run until the motion or petition is dis-

posed of. *Until then the judgment or decree does not take final effect for the purposes of the writ of error or appeal*"—citing cases.

See, also, to the same effect, Northern Pacific Railroad Co. v. Holmes, 155 U. S. 137, 15 Sup. Ct. 28, 39 L. Ed. 99.

In Kingman v. Western Mfg. Co., 170 U. S. 675, 678, 18 Sup. Ct. 786, 787 (42 L. Ed. 1192), the Supreme Court, speaking of the effect of a motion for a new trial in an action at law, said:

"No leave to file it was required, and as it was entertained by the court, argued by counsel without objection, and passed upon, it must be presumed that it was regularly and properly made. This being so, the case falls within the rule that if a motion or a petition for rehearing is made or presented in season and entertained by the court, the time limited for a writ of error or appeal does not begin to run until the motion or petition is disposed of. Until then the judgment or decree does not take final effect for the purposes of the writ of error or appeal"—citing, among others, the case of Brockett v. Brockett, supra.

From the foregoing it can safely be said that the doctrine originally announced in Brockett v. Brockett has been persistently adhered to, and that, until a petition or motion for a new trial in an action at law actually entertained by the court has been disposed of, the judgment before that time rendered does not take final effect for the purposes of a writ of error.

This would seem to be conclusive of the question before us; but it is contended that, because defendant failed to avail himself of the provisions of section 987, Rev. Stat. (U. S. Comp. St. 1901, p. 708), and secure a stay of execution for 42 days, and because he did not, within that time, file his petition for a new trial, the 60 days provided for in section 1007 within which the writ of error must be sued out and bond given in order to operate as a supersedeas was not enlarged by the filing of such a petition thereafter. This presents a new question. Section 987 is as follows:

"When a Circuit Court enters a judgment in a civil action, either upon a verdict or on a finding of the court upon the facts, in cases where such finding is allowed, execution may, on motion of either party, at the discretion of the court, and on such conditions for the security of the adverse party as it may judge proper, be stayed forty-two days from the time of entering judgment, to give time to file in the clerk's office of said court a petition for a new trial. * * *"

Section 1007 is as follows:

"In any case where a writ of error may be a supersedeas, the defendant may obtain such supersedeas by serving the writ of error, by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within sixty days, Sundays exclusive, after the rendering of the judgment complained of, and giving the security required by law on the issuing of the citation."

These two sections seem to be quite independent of each other and to cover separate and distinct subjects of legislation. The first, or section 987, does not in terms relate either to appeals or writs of error or to the supersedeas of the judgment, sought to be reviewed in an appellate court. It rather relates to a method of securing a deliberate reconsideration of a judgment or decree by the court which rendered it without the embarrassment which would occur if imme-

diate execution of the judgment were permitted, and yet on such conditions as secured the payment of the judgment if allowed to stand. It is well known by the profession that prior to the creation of the Circuit Courts of Appeals at a time when these sections were enacted by Congress few cases, comparatively speaking, ever found their way from the trial court to the Supreme Court of the United States, the then only available court of review. The fact that no appeal or writ of error could be prosecuted unless $5,000 or more was involved, the long distance from the places of trials to the seat of government where the Supreme Court was held, and the heavy expense attending the proceeding, were largely prohibitive of any review of the work of a trial judge. As a result his judgment in a large majority of cases was final. In view of this situation, it was quite a reasonable thing that provision should be made insuring the fullest opportunity, consistent with ample security to the judgment creditor, for the trial court to reconsider its own judgments upon petitions for a new trial. Lest the right of a suitor to invoke such reconsideration should be lost or impaired by the hasty execution of a judgment, the statute seems to have for its object and purpose the stay of such execution until such petition could be definitely and intelligently filed and considered.

In Felton v. Spiro, 24 C. C. A. 321, 78 Fed. 576, Circuit Judge Taft, speaking for the Court of Appeals for the Sixth Circuit, said:

"Section 987, Rev. St., relied on, relates only to method of staying execution pending new trial, and does not limit the time in which motions for new trial may be otherwise filed."

In Rutherford v. Penn. Mut. Life Ins. Co. (C. C.) 1 Fed. 456 (a case favorably commented upon by the Supreme Court in Kingman v. Western Mfg. Co.) Circuit Judge McCrary, speaking of this section of the statutes, said:

"This section still further provides for motions of this character (namely, to secure a reconsideration by the trial court of questions which had arisen in the course of trial), and it applies to the case where a party is not prepared at the time of trial to immediately file his motion. It provides for giving time within which that may be done. * * * This (section) provides for a case where he (the party) desires to obtain from the court an extension of the usual time within which to make his application for a new trial; and in that case * * * he must show that he has presented his petition, and that it has been allowed in accordance with the provisions of the section; but if he makes his motion for a new trial without asking for the time, then he can make it independent of section 987, and is not bound by the provisions of that section. In other words, the court had a perfect right to entertain the motion for a new trial; it did entertain it, and suspended the execution until it should be determined."

Section 1007, on the other hand, at the outset contemplates and provides for the supersedeas of a judgment on suing out of a writ of error. It deals with another subject from that involved in section 987 and is exclusively concerned with the question of securing a review of a judgment, not by the court which rendered it, but by an appellate tribunal.

As already pointed out, a judgment or decree does not become final for the purposes of a writ of error or appeal until the motion for a

rehearing which the court sees fit to entertain is disposed of. Why does not this established principle definitely dispose of the question before us? A supersedeas cannot be secured until an appeal is taken or a writ of error is sued out, and this cannot be done until a motion for a new trial, if made, is denied.

The only answer to this argument is that the motion for a new trial, in order to be effective to enlarge the time for securing a supersedeas, must be filed within the 42 days prescribed by section 987. The most obvious answer to this is that the statute does not say so. Not only so, but for reasons already stated, the two sections, 987 and 1007, serve two distinct purposes and manifestly were not intended to modify or limit each other in respect of the separate and distinct relief contemplated by them.

It is suggested that the cases of Sage v. Railroad Company, 93 U. S. 412, 23 L. Ed. 933, and Cambuston v. United States, 95 U. S. 285, 24 L. Ed. 448, are in conflict with the conclusion reached in this case; but, after a careful consideration of them in connection with the other cases cited by us, we are unable to so construe them. The first-mentioned case concerns the right of a third party and not a party to the suit. The holding was that a motion made by such third party who was permitted to intervene, only for the purpose of an appeal from a final decree, will not operate to suspend such decree. The Cambuston Case had to do only with sections 786 and 987 and involved no consideration of the rights conferred by section 1007.

It results that the motion to vacate the supersedeas must be denied.

REED, District Judge (dissenting in part). I am unable to concur in that part of the foregoing opinion which denies the motion to vacate the supersedeas.

The judgment was rendered November 1, 1910, early in the October, 1910, term of court. At the time of its rendition appellant was granted 60 days in which to settle a bill of exceptions only, and this time was subsequently enlarged by order of court. February 21, 1911, within such enlarged time, but nearly four months after the rendition of the judgment, an order was made further extending such time until April 1st, and it was then ordered:

"That the filing in this court by the defendant on or prior to March 1, 1911, of a bond that defendant will pay the judgment heretofore entered with interest and costs, if it is finally adjudged that he must pay such judgment, then the proceedings herein subsequent to such judgment shall be stayed until April 1, 1911."

No such bond was given by the defendant, and there was therefore no such stay of proceedings.

On March 24, 1911, the bill of exceptions was settled and allowed in open court. A motion for a new trial was then submitted on March 25th, and overruled April 1st following. The October term expired April 4, 1911, and on April 17th a writ of error was allowed to operate as a supersedeas and to review the judgment, and

the requisite security taken. A motion is made in this court by the defendant in error to vacate such supersedeas because not allowed within the time required by section 1007 of the Revised Statutes of the United States. That section is as follows:

"Sec. 1007. In any case where a writ of error may be a supersedeas, the defendant may obtain such supersedeas by serving the writ of error, by lodging a copy thereof for the adverse party in the clerk's office where the record remains, within sixty days, Sundays exclusive, after the rendering of the judgment complained of, and giving the security required by law on the issuing of the citation. But if he desires to stay process on the judgment, he may, having served his writ of error as aforesaid, give the security required by law within sixty days after the rendition of such judgment, or afterward with the permission of a justice or judge of the appellate court. And in such cases where a writ of error may be a supersedeas, executions shall not issue until the expiration of *the said term of sixty* (ten) days."

That this section is intended to limit, to 60 days after the final judgment, the time within which a supersedeas must be obtained admits of no doubt. Kitchen v. Randolph, 93 U. S. 87, 23 L. Ed. 810; Sage v. Railroad Co., 93 U. S. 412–417, 23 L. Ed. 933.

In the last-named case Mr. Chief Justice Waite, speaking for the court, said:

"A supersedeas is a statutory remedy. It is only obtained by a strict compliance with all the required conditions, none of which can be dispensed with. (Citing cases.) Time is an essential element in the proceeding, and one which neither the court nor the judges can disregard. If a delay beyond the limited time occurs, the right to the remedy is gone, and the successful party holds his judgment or decree freed and discharged from this means of staying proceedings for its collection or enforcement. This is a right which he has acquired, and of which he cannot be deprived without due process of law."

Brockett v. Brockett, 2 How. 238, 11 L. Ed. 251, is distinguished in the opinion upon grounds that do not affect the interpretation thus placed upon section 1007. The rule held in Sage v. Railroad Company has never been departed from so far as I can discover, and it was followed by this court in Logan v. Goodwin, 101 Fed. 654, 41 C. C. A. 573. See, also, Conboy v. First National Bank, 203 U. S. 141–145, 27 Sup. Ct. 50, 51 L. Ed. 128; and New England R. Co. v. Hyde, 101 Fed. 397, 41 C. C. A. 404.

The only question therefore is: When does the judgment become final for such purpose? It is said by the majority that the judgment is within the control of the court during the term at which it is rendered, and may be set aside at any time during such term for reasons satisfactory to the court, and that a motion filed more than 60 days after the rendition of the judgment and without leave of court, the term still continuing, suspends the finality of the judgment until the motion is ruled upon; and if the motion is denied, the time within which the writ of error, to operate as a supersedeas or to review the judgment, must be obtained, dates from such ruling only; and authorities are cited by the majority which it is claimed support this contention. In all of the cases so cited, save one, it affirmatively appears either that the motion for new trial or petition for rehearing was filed within the time in which the supersedeas is

required to be obtained, or it is assumed in the opinion that it was so filed.

Thus in Kingman & Co. v. Western Manfg. Co., 170 U. S. 675, 18 Sup. Ct. 786, 42 L. Ed. 1192, it affirmatively appears that judgment was entered against Kingman & Co., June 4, 1895, upon a verdict returned against them on that date, which was one of the days of the May term, 1895, of the Circuit Court. On June 6th, it being still the May term, Kingman & Co. filed their motion to vacate and set aside the judgment, and for a new trial, for various reasons therein assigned. The motion was heard and denied on December 11, 1895, at the term of court succeeding that upon which the judgment was entered. The writ of error was allowed within 60 days after the ruling upon such motion, and the requisite security taken. Held, that the filing of the motion for new trial within two days after the rendition of the judgment suspended its operation until that motion was ruled upon, and that a writ of error sued out within 60 days after such ruling was in due time.

Texas Pacific R. R. Co. v. Murphy, 111 U. S. 488, 4 Sup. Ct. 497, 28 L. Ed. 492, is a fair type of the cases in which it does not affirmatively appear that the motion was filed within the 60 days, but in which it is assumed that it was filed in due season. That was a writ of error to the Supreme Court of a state, in which court a petition for rehearing was filed, and was considered and overruled by the court some months after the entry of the original decree. It does not appear within what time the petition for rehearing was filed, but it was assumed by the United States Supreme Court that it was within the time required by the state statute, or it would not have been considered by the state Supreme Court.

Brockett v. Brockett, above, is the only apparent exception to this rule. That was a suit in equity, and the motion was to dismiss the appeal, and not to vacate the supersedeas—proceedings which are distinct and separate from each other. A motion, however, to reopen the decree for some purpose, was filed in the Circuit Court at the same term, and within 16 days after the decree was entered, and was referred by the court to a master to report thereon. Upon the coming in of the master's report 15 days later, and at the same term the motion was denied and the appeal was taken within 10 days thereafter (the time then required within which a supersedeas must be obtained), and it was held to be in time.

Section 1012 of the Revised Statutes (U. S. Comp. St. 1901, p. 716) provides, however, that:

"Appeals from the Circuit Courts and District Courts acting as Circuit Courts, * * * shall be subject to the same rules, regulations, and restrictions as are or may be prescribed in law in cases of writs of error."

Act of March 3, 1803, c. 40, 2 Stat. 244, amending sections 19–22 of the Judiciary Act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 73). That being true, the motion to reopen the decree in Brockett v. Brockett within 16 days after its rendition would be within the 42 days prescribed by section 987, Revised Statutes of the United States, and

might suspend the operation of the decree until such motion was ruled upon.

The rule which permits a motion for new trial to be filed at any time during the term at which the judgment is entered in law cases is that of the common law, and unless modified by some statute of the United States would obtain in the courts of the United States in law actions.

Section 17 of the Judiciary Act of 1789 (which is now section 726 of the Rev. Stats. [U. S. Comp. St. 1901, p. 584]) reads as follows:

"All of the said courts (of the United States) shall have power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law."

This section, unless modified as above stated, would doubtless permit the filing of a motion for a new trial at any time during the term at which the judgment was rendered for the reasons stated, as at common law, and while the judgment was under the control of the court.

But section 18 of the act of 1789 (which is now section 987 of the Rev. Stats.) immediately follows section 17, and is as follows:

"When a Circuit Court enters judgment in a civil action, either upon a verdict or on a finding of the court upon the facts, in cases where such finding is allowed, execution may, on motion of either party, at the discretion of the court, and on such conditions for the security of the adverse party as it may judge proper, be stayed forty-two days from the time of entering judgment, to give time to file in the clerk's office of said court a petition for a new trial. If such petition is filed within said term of forty-two days, with a certificate thereon from any judge of such court that he allows it to be filed, which certificate he may make or refuse at his discretion, execution shall, of course, be further stayed to the next session of said court. If a new trial be granted, the former judgment shall be thereby rendered void."

This section, it seems to me, was intended to limit the time within which motions for new trials as authorized by section 726 must be filed. It was expressly so interpreted by the Supreme Court of the United States in Cambuston v. United States, 95 U. S. 285, 24 L. Ed. 448. In that case Mr. Chief Justice Waite, delivering the unanimous opinion of the Supreme Court, after referring to Brockett v. Brockett, and quoting sections 726 and 987 of the Rev. Stats. of the United States, said at page 288 of 95 U. S. (24 L. Ed. 448):

"From this legislation it is apparent that it was not the policy of Congress to suspend the operation of a judgment so as to allow an application for a new trial in any case beyond a period of 42 days from the time of its rendition."

This decision has never been questioned by any subsequent decision of the Supreme Court, and that court is not given to overruling its deliberate judgments previously rendered without referring to them and stating in clear and specific language its reason for so doing. It has never done so with reference to the Cambuston Case, and it seems to me that that decision still stands as the deliberate judgment of the Supreme Court as to the meaning and purpose of that section. It may be that this section also enlarges the grounds upon which the motion for new trial may be granted; but that question need not be now considered.

In Conboy v. First National Bank, 203 U. S. 141, 27 Sup. Ct. 50, 51 L. Ed. 128, there was an attempt to appeal from an order in bankruptcy allowing the claim of the bank against the bankrupt estate under section 25b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]). The order of the District Court affirming the order of the referee was affirmed by the Court of Appeals January 23, 1905. April 25, 1905, the trustee petitioned that court to recall its mandate and vacate the order therefor, which application was denied. On May 8th a petition for rehearing was filed, which was denied by the Court of Appeals May 17th, and an order to that effect entered May 24th. On the same day, May 24th, a petition was presented to a justice of the Supreme Court praying an appeal from the whole of said order of affirmance by the Circuit Court of Appeals dated January 23, 1905, and from the order of April 25, 1905, denying the motion to recall the mandate, and from the order of May 24, 1905, denying the petition for rehearing. An appeal was allowed and certificate granted May 27, 1905, under section 25b(2) of the Bankruptcy Act, and it was claimed that under the rule held in Brockett v. Brockett that order of the Court of Appeals did not become final until the petition for rehearing was denied.

Mr. Chief Justice Fuller, overruling this contention, said, at page 145 of 203 U. S., at page 52 of 27 Sup. Ct. (51 L. Ed. 128):

"The cases cited for appellant, in which it was held that an application for a rehearing, made before the time for appeal had expired, suspended the running of the period for taking an appeal, are not applicable when that period had already expired. When the time for taking an appeal has expired, it cannot be arrested or called back by a simple order of court. If it could be, the law which limits the time within which an appeal can be taken would be a dead letter."

This rule is as clearly applicable to proceedings for a supersedeas as it is to the time within which an appeal or writ of error to review a judgment or decree of the court may be taken.

It affirmatively appears that the motion for new trial in the present case was not filed until nearly five months after the rendition of the judgment; and at no time prior to that were any steps taken, either under section 987 or otherwise, to suspend the finality of the judgment of November 1, 1910. The writ of error was not sued out until April 17th or but 13 days before the expiration of 6 months after the entry of the judgment. In my judgment the supersedeas in this case cannot be upheld without disregarding the decisions of the Supreme Court in Kitchen v. Randolph, Cambuston v. United States, and Conboy v. First National Bank.

For the reasons stated, I think the motion to vacate the supersedeas should be sustained.