### ULMER et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 12, 1920.)

No. 208.

1. **Criminal law ☞1088(1)—Stipulated matter not part of record.**

   Matters stipulated by counsel are not thereby made part of the record, nor can they be made a part of the record by the certificate of the judge that the stipulated matter is a correct transcript of the record "as agreed on by the parties."

2. **Criminal law ☞1092(17)—Bill of exceptions cannot be amended after expiration of term without reservation of control over case.**

   The power to amend a bill of exceptions, like the power to allow the bill on the first instance, cannot be exercised after the court below has lost its power over the case, as when the term has expired without control of the case having been reserved.

3. **Criminal law ☞1083—Court loses power to settle by filing of writ of error.**

   The trial court loses its power over a case and its right to settle a bill of exceptions after a writ of error is filed in the appellate court.

4. **Criminal law ☞1083—Consent cannot authorize signing after filing of writ of error.**

   Consent of parties, given after expiration of the term and after a writ of error has been filed in the appellate court, is ineffective to authorize the signing of a bill of exceptions.

5. **Criminal law ☞1092(1)—Absence of trial judge from district not a "disability" which authorizes signing by another judge.**

   The absence from the district of the judge who tried a cause is not a "disability," within the meaning of Rev. St. § 953, as amended by Act Cong. June 5, 1900, § 1 (Comp. St. § 1590), which authorizes another judge who is within the district to allow and sign a bill of exceptions.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Disability.]

6. **Criminal law ☞1092(14)—When signed by another than trial judge, certificate should show reason.**

   Where a bill of exceptions is signed by one who was not the trial judge, he should expressly state in his certificate the reason why he, and not the trial judge, allowed and signed the bill.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Joseph Ulmer and others. Judgment of conviction, and defendants bring error. Affirmed.

The plaintiffs in error were defendants below and will be hereinafter referred to as defendants, and the defendant in error, the plaintiff below, will be in like manner referred to as the plaintiff. The defendants were tried and convicted under an indictment charging the use of the mails to defraud. The indictment contained three counts. The first and second counts charged violations of section 215 of the Criminal Code. The third charged conspiracy, in violation of sections 37 and 215 of that Code. The third count was quashed during the course of the instructions to the jury.

Section 37 relates to conspiring to commit an offense against the United States. 10 U. S. Comp. Stat. 1916, p. 12552. Section 215 relates to the use of the mails to promote frauds. 10 U. S. Comp. Stat. 1916, p. 12796. The first and second counts are alike, except in the description of the letters sent

through-the mails. Each letter was alleged to have been from the company to a customer, and acknowledged a receipt of an order for whisky.

The indictment charges a scheme to defraud, and alleged that the defendants falsely and fraudulently represented and pretended to the persons intended to be entrapped and deceived that they were members and acting under the authority of the company, which they falsely and fraudulently represented to be a distiller and distributor of whisky; that it was part of the scheme to induce the victims to open correspondence with them concerning the sale of whiskies represented to be of high grade of the name of "Seminole Club" and "Overbrook Rye"; that the defendants intended to sell the victims certain cheap whiskies, which they would obtain from distillers, and to convert to their own use the proceeds, without profit to the victims.

It was further charged, as part of the fraudulent scheme, that the defendants represented to the victims that the company would deliver to them the original warehouse receipt for the whisky purchased; that the whisky could not be released from the bonded warehouse, except upon presentation of the warehouse receipt; that the victims could obtain the whiskies by making small cash payments and giving notes for the balance due; that the victims would be sole agents in the territory in which they resided; that the warehouse receipts to be delivered were issued in deference to the laws of the United States; and other similar misleading things. It was also alleged that each of the aforesaid representations, as well as others, made to the victims, as the defendants well knew, was false and fraudulent, intended to mislead and defraud the victims, the purpose being to induce the victims to part with their money and property in the purchase of the whiskies, and that the defendants knew that the certificates were of no value and were not issued in deference to any law of the United States. It was then alleged that, for the purpose of executing the scheme, the defendants placed and caused to be placed in the United States mails certain letters to which reference is made above.

The defendants were salesmen employed by the Seminole Distilling & Distributing Company, a New York corporation, whose business consisted in purchasing from distillers large quantities of whisky, which was stored in United States bonded warehouses. The company also distilled its own whisky. The company sold the whisky by means of contracts or certificates through the defendants and other salesmen.

The trial began on March 11, 1918, and was concluded on March 28, 1918. The jury returned a verdict of guilty on all the counts. Sentence was deferred until April 3d, when counsel for the defendants were heard at length. Judge Mack denied various motions made and said: "I haven't any doubt, or reasonable doubt, or any doubt at all, as to the correctness of the verdict under the law the jury has reached. I haven't any doubt as to the guilt of each one of these men."

Richard Kobsa and Joseph Ulmer were thereupon sentenced to imprisonment to 2 years in the penitentiary at Atlanta. Henry Kobsa was sentenced to 60 days in jail and to pay a fine of $500. Rudolph Szathmary was sentenced to 6 months in jail. There are 43 assignments of error. Most of these assignments appear to have been abandoned, not being mentioned in the printed brief or referred to in the oral argument.

Alfred M. Simon, of New York City (A. M. Simon and Charles Fredericks, of New York City, of counsel), for plaintiffs in error.

Francis C. Caffey, U. S. Atty., and E. Paul Yaselli, Asst. Dist. Atty., both of New York City, for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] This court on March 29, 1919, directed an order to be entered giving to the defendants the privilege of dispensing with the printing of the record and to argue "the writ of error upon a typewritten record."

266 F.—12

The court has been furnished with the stenographer's minutes in three typewritten volumes. An examination of these volumes shows that they have not been certified. They do not pretend to be a bill of exceptions, and there is nothing about them which entitled this court to examine them.

The court has also been furnished with the following set of papers: A copy of the indictment; an amended bill of exceptions (so .called), which is not signed by the judge who tried the case, and who came from outside the district, but by one of the resident judges; an amended assignment of error; a writ of error; a petition for a writ of error; an order allowing a writ of error; a stipulation, and certificate. The certificate is to the effect that the foregoing is a correct transcript of the record "in the above-entitled matter as agreed on by the parties." We took occasion to point out in Buessel v. United States, 258 Fed. 811, 817, 170 C. C. A. 105, that a stipulation does not make the matter stipulated a part of the record; and we now take this opportunity to add to what we there said by stating that matters stipulated by counsel cannot be made a part of the record by the certificate of the judge that the stipulated matter is a correct transcript of the record "as agreed on by the parties."

The trial was concluded on March 28, 1918. The amended bill of exceptions was signed on March 4, 1919. There is nothing in the record to show that the regular time within which a bill of exceptions could be signed had been extended. Under rule 5 of the District Court for the Southern District of New York, in which court the trial of this case took place, the bill might have been signed within 90 days from the date of the judgment. In Blisse v. United States, 263 Fed. 961, decided by this court at this term, we considered at length the time within which a bill of exceptions can be settled. The bill must be signed within the term at which the judgment is entered, unless during the term the time is extended, or unless it is signed thereafter by consent of the parties previously given. We also declared in that case that after a writ of error has been filed and perfected the cause comes within the authority of the appellate court alone.

[2] It is true that we have in this case an amended bill of exceptions. But the power to amend a bill of exceptions, like the power to allow the bill in the first instance, cannot be exercised after the court below has lost its power over the case, as when the term has expired without control of the case having been reserved. Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 Sup. Ct. 450, 36 L. Ed. 162.

[3] And the court below loses its power over the case and its right to settle the bill of exceptions after the writ of error is filed in this court. In this case the return was not made until January 21, 1920. That, however, does not help the appellants; it not appearing that there were any extensions of time, properly made in the court below, for the allowance and signing of the bill.

[4] It does not appear in this case that there was consent of the parties to the signing of the bill after the term expired. Consent of the parties, given during the term, may be sufficient authority for the sign-

ing of the bill after the term expired. Waldron v. Waldron, 156 U. S. 361, 378, 15 Sup. Ct. 383, 39 L. Ed. 453. But in Blisse v. United States, supra, we stated our opinion to be that consent of the parties, even if expressly given, would be ineffective, if given after the writ of error had removed the case into this court.

[5] There is another matter which needs consideration. We have heretofore stated in this opinion that the amended bill of exceptions was not signed by the judge who tried the case, and who came from outside the district, but by one of the judges resident within the district. The question to be considered is whether such resident judge is authorized to settle a bill of exceptions in a case he did not try. The Act of Congress of June 1, 1872, c. 255, § 4, 17 Stat. 197 (Comp. St. § 1590), provided as follows:

"A bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat at the trial of the cause, without any seal of court or judge annexed thereto."

This provision was passed on by the Supreme Court in 1899 in Malony v. Adsit, 175 U. S. 281, 20 Sup. Ct. 115, 44 L. Ed. 163. The court held the provision meant that no bill of exceptions could be deemed sufficiently authenticated, unless signed by the judge who sat at the trial, or by the presiding judge, if more than one sat. In that case the bill of exceptions was not signed by the judge who tried the case, but was signed by his successor in office, several months after the trial. The court held it could not be considered. The opinion states:

"It is settled that allowing and signing a bill of exceptions is a judicial act, which can only be performed by the judge who sat at the trial. What took place at the trial, and is a proper subject of exception, can only be judicially known by the judge who has acted in that capacity. Such knowledge cannot be brought to a judge who did not participate in the trial, or to a judge who has succeeded to a judge who did, by what purports to be a bill of exceptions, but which has not been signed and allowed by the trial judge."

The provision was also construed by the Circuit Court of Appeals in the Fourth Circuit in Oxford & Coast Line R. Co. v. Union Bank of Richmond, 153 Fed. 723, 82 C. C. A. 609, and the court said:

"This provision of the statute is plain and explicit, and there can be no doubt as to its meaning. It evidently means that no bill of exceptions can be sufficiently authenticated, unless signed by a judge who sat at the trial."

After the decision of the Supreme Court, and no doubt because of it, Congress passed the Act of June 5, 1900, c. 717, § 1. That act included the provision contained in the act of 1872, above set forth, with the following addition:

"And in case the judge before whom the cause has heretofore been or may hereafter be tried is, by reason of death, sickness, or other disability, unable to hear and pass upon the motion for a new trial and allow and sign said bill of exceptions, then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such cause has been or is taken in stenographic notes, or if the said judge is satisfied by any other means that he can pass upon such motion and allow a true bill of exceptions, shall pass upon said motion and allow and sign such bill of exceptions; and his ruling upon such motion and allowance and signing of such bill of exceptions shall be as valid as if such

ruling and allowance and signing of such bill of exceptions had been made by the judge before whom such cause was tried; but in case said judge is satisfied that owing to the fact that he did not preside at the trial, or for any other cause, that he cannot fairly pass upon said motion, and allow and sign said bill of exceptions, then he may in his discretion grant a new trial to the party moving therefor." 3 U. S. Comp. Stat. 1916, Annotated, p. 3168, § 1590.

The act of 1900 was construed in 1901 by the Circuit Court of Appeals of the Seventh Circuit in Western Dredging & Improvement Co. v. Heldmaier, 111 Fed. 125, 49 C. C. A. 266. The court said:

"Is such absence from the circuit a disability, within the meaning of the statute? It is an accepted canon in the construction of statutes that 'when particular words are followed by general ones the latter are to be held to apply to persons and things of the same kind as those which precede.' * * * In the case at bar the statute authorizes the allowance and signing of the bill of exceptions by a judge other than the trial judge only in case of 'death, sickness or other disability' of the trial judge. 'Noscitur a sociis.' The term 'other disability' means disability of like character to death or sickness, not a disability arising from temporary absence from the district or circuit, if, indeed, legal disability could arise by reason of absence from the district. The statute means a physical or mental disability arising from either death, sickness, insanity, or disorder of like character, by reason of which the judge was disabled from the performance of judicial function.

"The mere absence from the district or circuit in which the case was tried is not such a disability. If it be needful that the trial judge should be personally present in the district to allow and sign the bill of exceptions, his presence should be procured. In the district from which this cause comes it is usual to procure the attendance of the District Judges from other districts to hold court in aid of the dispatch of business. It is not supposable that the statute designed that during the temporary absence of the trial judge from the district the difficult and delicate duty of correctly stating the conduct of trials held by him should be devolved upon a judge wholly uninformed in respect thereto. The statute sought to provide for an emergency where there would be a failure of justice unless the extraordinary remedy could be employed. We are of the opinion that the statute should not be extended to the case before us, and that no legal cause is stated for the allowance and signing of the bill of exceptions by a judge other than the trial judge."

The Circuit Court of Appeals in the Eighth Circuit, in Sanborn v. Bay, 194 Fed. 37, 114 C. C. A. 57, had this matter under consideration. The trial judge, after the trial and before the bill of exceptions was signed, was appointed a Circuit Judge to serve in the Commerce Court, and the court held that his acceptance of the appointment disqualified him while so serving from allowing the bill of exceptions, and that the bill could properly be allowed and be signed by another judge appointed or designated temporarily to preside in such court. The Case of the American Bonding & Trust Company was not followed; the court saying:

"While we might well agree with the conclusion reached in that particular case, we cannot think the act of 1900 was intended by Congress to limit the 'disqualification' referred to, to one occasioned by physical or mental ailment. This in our opinion would be too narrow a construction. It would not seem to accomplish the legislative purpose or afford the relief which Congress intended to afford by the language actually employed. Inability to perform duty occasioned by death or sickness was obviously not the only disability Congress had in mind. It employed a comprehensive term sufficient to cover all disqualifications, and we do not think the artificial rule, 'noscitur a sociis,' invoked by counsel, was ever intended to be employed to thwart an obvious purpose. Nothing in fact could create a more effective 'disability' than an utter

disqualification of the presiding judge to perform the act which Congress attempted to provide for."

It is apparent from the above decisions that the act of Congress is somewhat ambiguous, and its application to the facts of this case not altogether free from doubt. But the object of all interpretation and construction of statutes is to ascertain and carry into effect the intention of the law makers. The literal interpretation of a statute may lead to an absurdity and fail to express the real intent of the Legislature. When this is the case, it is well settled that the spirit of the law is to control the letter, and that a matter which is within the intention of the statute is as much within the statute as if it were within the letter, and that the statute is to be so construed as to advance the remedy and suppress the mischief as contemplated by the legislators. See Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226.

But was it the intention of the lawmakers to authorize a judge, who did not sit in a case, but who is resident within the district, to sign a bill of exceptions for a judge who is still in office, but who at the time the bill is to be signed happens to be outside the district in which the trial occurred? A majority of the court are not satisfied that the Congress had any such intention. In view of the explicit decision of the Supreme Court in Malony v. Adsit, supra, the majority are of the opinion that, if Congress had intended such a result, the language used in the Act of June 5, 1900, would have been more clearly and certainly indicated. The lawmakers must have had that decision fresh in their minds, and as we have already said we have no doubt the act was passed because of what that case decided. The majority of this court, therefore, are of the opinion expressed by the Circuit Court of Appeals in the Seventh Circuit in Western Dredging & Improvement Co. v. Heldmaier, supra, and hold that the absence of the trial judge from the district is not a disability within the meaning of the statute, so as to allow the bill to be allowed and signed by another judge who is within the district.

[6] It ought to be said, in any case, that where a bill of exceptions is signed by one who was not the trial judge he should in doing so expressly state in his certificate the reason why he, and not the trial judge, allowed and signed the bill. Unless this is done, this court may not know by what right one who did not try the case came to allow the bill. In the present case the certificate of the judge does not give us any information whatever upon the subject. In this connection we may also repeat what we said in the Blisse Case, supra:

"Where a bill of exceptions is signed after the term at which the judgment is rendered, but within a period allowed by an order made within the term extending the time for its settlement, or by virtue of consent of parties duly given, it ought to contain an express statement to that effect, so that it may affirmatively appear that the signing and filing of the same were with due authority."

That statement was made after the amended bill of exceptions in the instant case was signed, and the failure to find such a statement in the present bill is not on that account made the subject of criticism.

This court listened to the argument of this case without our attention being called to the facts above discussed. These facts were disclosed by our own examination of the case after the argument was concluded. Notwithstanding the fact that the government's counsel has not objected to the absence of a bill of exceptions, we are constrained by the decisions of the Supreme Court, and by those of our own court as well,· to dispose of this case without examining the errors alleged.

The errors relied upon by the defendants relate to what is asserted to be the wrongful admission of evidence, and to the failure of the government to make out its case, and therefore to the alleged error of the court in denying the motion to dismiss the indictment. These questions all depend upon a bill of exceptions, and, as there is no bill of exceptions, there is nothing to consider.

Judgment affirmed.