## MALONY v. ADSIT.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

No. 67. Argued October 25, 26, 1899. — Decided December 4, 1899.

Allowing and signing a bill of exceptions is a judicial act, which can only be performed by the judge who sat at the trial; and section 953 of the Revised Statutes is intended to provide and does provide that no bill of exceptions can be deemed sufficiently authenticated, unless signed by the judge who sat at the trial, or by the presiding judge if more than one sat.

This action being an action of ejectment, the provision in § 3524 of the Oregon Code with regard to actions for forcible entry and detainer have no application to it.

In May, 1896, Ohlin H. Adsit filed a complaint against John F. Malony in the United States District Court for the District of Alaska, to recover possession of the undivided one half of a tract of land in the town of Juneau, District of Alaska. The complaint averred that on the 29th day of April, 1891, and for more than nine years prior thereto, the plaintiff and his grantors were the owners by right of prior occupancy and actual possession, of the land in question, and that plaintiff was entitled to the possession thereof; that one James Weim was the owner of the other undivided one half part of said land; that on or about the 29th day of April, 1891, the defendant and his grantor, without right or title so to do, entered thereon, and ousted and ejected the plaintiff and his grantors therefrom, and from thence hitherto have wrongfully withheld possession from the plaintiff.

The plaintiff prayed judgment for the recovery of the possession of an undivided one half part or interest of, in and to the whole of the described premises, and for his costs and disbursements in the action.

On June 8, 1896, the defendant demurred to the complaint, on the alleged ground that the same did not state facts sufficient to constitute a cause of action.

On October 9, 1896, the court overruled the demurrer, and gave leave to the defendant to file an answer. An answer and replication thereto were filed. The case was tried August 10, 1897, before Arthur K. Delany, District Judge, a jury having been waived. Judge Delany made the following findings of facts and conclusions of law:

"This cause having been regularly called for trial before the court — a jury trial having been expressly waived by stipulation in open court of the respective parties appearing herein — Johnson & Heid appeared as attorneys for the plaintiff and John F. Malony, the defendant herein, appeared in proper person; and the court having heard the proofs of the respective parties and considered the same and the records and papers in the cause and the arguments of the respective attorneys thereon, and the cause having been submitted to the court for its decision, the court now finds the following facts:

"I. That on the 19th day of April, 1881, the plaintiff and his grantors entered into actual possession of all that certain lot, piece or parcel of land described in the complaint as lot numbered four (4), in block numbered four (4), in the town of Juneau, District of Alaska, according to the plat and survey of said town of Juneau made by one G. C. Hanus, accepted and adopted in the year 1881 by the citizens of the town formerly known as Rockwell, but now Juneau, Alaska, said lot being situated on the corner of Second and Franklin streets, in said town of Juneau, claiming said lot, piece or parcel of land in their own right; and the said plaintiff and his grantors have, ever since the date last aforesaid, occupied, used and possessed said lot or piece or parcel of land, having erected a substantial frame or wooden building or structure thereon, using and claiming the same in their own right from that date to the present time adversely to all the world, and especially as against the defendant.

"II. That the plaintiff is the owner of an undivided one half (½) part or interest of, in and to said lot No. 4, in said

block No. 4, hereinbefore described, and that the whole of said lot, piece or parcel of land in the complaint described lies within the said town of Juneau, Alaska.

" III. That on or about the 29th day of April, 1891, the defendant, without right or title so to do, entered on and upon said described lot, piece or parcel of land in the complaint described, and ousted and ejected the plaintiff and his grantors therefrom, and from thence hitherto has wrongfully withheld the possession thereof from the said plaintiff.

" As conclusions of law from the foregoing facts the court now hereby finds and decides:

" 1. That the plaintiff is the owner and entitled to the possession of an undivided one half part or interest of, in and to said lot, piece or parcel of land as the same is described in the complaint on file herein as against the defendant and all persons claiming or to claim the same or any part of said right or interest of the plaintiff in and to said lot, piece or parcel of land under him, the said defendant, and that the defendant has no right, title or interest in or to said land or any part thereof.

" 2. That the plaintiff is entitled to a judgment, as prayed for in his complaint, for the recovery of the possession of an undivided one half part or interest of, in and to said lot. No. 4, in said block No. 4, in said town of Juneau, against said defendant and all persons claiming or to claim the same or any part thereof under or through the said defendant.

" 3. That the plaintiff is entitled to a judgment for costs, to be taxed herein, against the defendant.

" And judgment is hereby ordered to be entered accordingly."

On August 11, 1897, a motion for a new trial was made and overruled. Judgment for the plaintiff was duly entered, and on September 20, 1897, the plaintiff was put in possession of the premises in dispute, in pursuance of a writ of possession allowed by Charles S. Johnson, Judge of the United States District Court, who had succeeded Arthur R. Delany to that office.

On September 6, 1897, the defendant gave notice of an

appeal to the United States Circuit Court of Appeals for the Ninth Circuit. On January 4, 1898, the defendant, acting on a decision of the Supreme Court of the United States, wherein it was held that such causes were not appealable to the Circuit Court of Appeals, but that appeals in such cases should be prosecuted to the Supreme Court of the United States, prayed for an appeal to this court, which was on said day allowed as prayed for by Judge Johnson.

On January 4, 1898, a bill of exceptions was filed, to which was appended a statement, signed by the respective counsel, that the bill of exceptions was correct and in accordance with the proceedings had in the trial of the cause; and the record discloses that, on said 4th of January, 1898, the bill of exceptions was settled and allowed by Judge Johnson.

*Mr. L. T. Michener* for appellant. *Mr. W. W. Dudley* and *Mr. Oscar Foote* were on his brief.

*Mr. S. M. Stockslager* for appellee. *Mr. George C. Heard* was on his brief.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

An inspection of this record discloses that the bill of exceptions was not settled, allowed and signed by the judge who tried the case, but by his successor in office, several months after the trial. It is settled that allowing and signing a bill of exceptions is a judicial act, which can only be performed by the judge who sat at the trial. What took place at the trial, and is a proper subject of exception, can only be judicially known by the judge who has acted in that capacity. Such knowledge cannot be brought to a judge who did not participate in the trial or to a judge who has succeeded to a judge who did, by what purports to be a bill of exceptions, but which has not been signed and allowed by the trial judge.

Section 953 of the Revised Statutes is as follows: "A bill

of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, or by the presiding judge thereof, if more than one judge sat at the trial of the cause, without any seal of court or judge being annexed thereto."

We understand this enactment to mean that no bill of exceptions can be deemed sufficiently authenticated unless signed by the judge who sat at the trial, or by the presiding judge if more than one sat.

In *Mussina* v. *Cavazos*, 6 Wall. 355, 363, after the case had been elaborately argued on the merits, it was discovered by the court that the bill of exceptions had not been either signed or sealed by the judge below. Thereupon the court delivered the following opinion : ".Whatever might be our opinion of the exceptions which appear in the record, if they were presented in such a way that we could consider them, we find them beyond our reach. The bill of exceptions, or what purports to be a bill of exceptions, covering more than three hundred and fifty pages of the printed record, is neither signed nor sealed by the judge who tried the cause; and there is nothing which shows that it was submitted to him or in any way received his sanction. We are therefore constrained to affirm the judgment."

*Boroscale* v. *Bosworth*, a case reported in 98 Mass. 34, presented a somewhat similar question. There a judge of the trial court took a bill of exceptions that had been substantially agreed on by the parties and duly filed, to examine whether the statement of his rulings was correct, with the understanding that if correct he should allow the bill. However, the judge retained the bill without allowing it for more than a year, and resigned his office without having done so. Afterwards, in such circumstances, a motion was made for a new trial in the trial court, and, allowed. To the ruling which allowed a new trial the plaintiffs took an exception and carried the case to the Supreme Judicial Court. That court refused to disturb the order of the court below awarding a new trial, and held that where it appears to the court that a party has been deprived, without his fault, of a right

or remedy which the law gives him, it would generally be held a legal reason for granting a new trial. The court cited the English cases of *Nind* v. *Arthur*, 7 Dowl. & Lowndes, 252, where upon the death of Mr. Justice Coltman, before allowing a bill of exceptions which had been presented to him, a new trial was granted; also *Bennett* v. *P. & O. Steamship Company*, 16 C. B. 29, where the settling of a bill of exceptions having been delayed by the appointment of Chief Justice Wilde as Lord Chancellor, and afterwards by reason of his infirm health all hope of it having been lost, a new trial was granted by the trial court. Also the case of *Newton* v. *Boodle*, 3 C. B. 796, where the death of Chief Justice Tindal prevented the sealing of a bill of exceptions, without laches of the excepting party, was regarded as good ground for a motion for a new trial.

The *rationale* of these cases evidently was that the court of errors could not consider a bill of exceptions that had not been signed by the judge who tried the case, and that such failure or omission could not be supplied by agreement of the parties, but that the only remedy was to be found in a motion for a new trial.

Those cases were cited with approval by this court in *Hume* v. *Bowie*, 148 U. S. 245, where it was held that where the judge presiding at the trial of a cause in the Supreme Court of the District of Columbia at circuit dies without having settled a bill of exceptions, it is in order for a motion to be made to set aside the verdict and order a new trial, and that, where such an order is made by the court in general term, it is not a final judgment from which an appeal may be taken to this court. It is true that there is a rule of the Supreme Court of the District of Columbia which provides that in case the judge is unable to settle the bill of exceptions and counsel cannot settle it by agreement a new trial shall be granted, and that this court regarded that rule as applying to the case in hand, and that hence a new trial was a matter of course.

In *Young* v. *Martin*, 8 Wall. 354, where the exceptions were noted by the clerk of the trial court and so appeared

in the record, it was held that " to be of any avail exceptions must not only be drawn up so as to present distinctly the ruling of the court upon the points raised, but they must be signed and sealed by the presiding judge. Unless so signed and sealed they do not constitute any part of the record which can be considered by an appellate court."

In *Origet* v. *United States*, 125 U. S. 240, 243, the record contained a paper headed " Bill of Exceptions." At the foot of the paper appeared the following : " Allowed and ordered on file, Nov. 22, '83. A. B." And it was held, " This cannot be regarded as a proper signature by the judge to a bill of exceptions, nor can the paper be regarded for the purposes of review as a bill of exceptions. . . . Sec. 953 of the Revised Statutes merely dispensed with the seal. The necessity for the signature still remains. We cannot regard the initials ' A. B.' as the signature of the judge, or as a sufficient authentication of the bill of exceptions, or as sufficient evidence of its allowance by the judge or court. Therefore the questions purporting to be raised by the paper cannot be considered.".

In *State* v. *Weiskittle*, 61 Maryland, 51, it was said : " In this State it is not admissible for another judge to pass upon the correctness of his predecessor's ruling in such a case. The new trial will go as a matter of course."

It certainly cannot be contended that if the trial judge is able officially to sign the bill of exceptions, it would be competent for the counsel to dispense with his action, and rely upon an agreed statement of the facts and law of the case as tried. Nor can they agree that another than the trial judge may perform his functions in that regard. In *Lynde* v. *Craney*, 95 Michigan, 109, it was said that the practice of stipulating a bill of exceptions without the sanction of the judge cannot be commended ; and if such fact be brought to the attention of the court before the argument of the case, the appeal will be dismissed.

In *Coburn* v. *Murray*, 2 Maine, 336, it was held that a bill unauthenticated by the trial judge cannot be given validity by consent of counsel.

We are referred to no decision of this court on the precise question whether counsel can stipulate the correctness of a bill of exceptions not signed by the trial judge. But we think that on principle this cannot be done, and we regard the cases just cited as sound statements of the law.

Accordingly, our conclusion is that the errors of the trial court alleged in the bill of exceptions, unauthenticated by the signature of the judge who sat at the trial, cannot be considered by us.

The defendant's demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, having been overruled, and the defendant not having elected to stand on his demurrer, but having availed himself of the leave of the court to file an answer, and his several objections to the admission of evidence at the trial not having been brought before us by a proper bill of exceptions, all that is left for us to consider is whether, on the facts found by the court below, the plaintiff was entitled to judgment.

Those facts, briefly stated, were that the plaintiff and his grantors on April 19, 1881, entered into actual possession of the land in dispute; put substantial improvements thereon; and continued in possession, under claim of right, and adversely against the defendant and all others, till on April 29, 1891, the defendant, without right or title so to do, entered upon the said land, and ejected the plaintiff therefrom; that the plaintiff was the owner of an undivided one half part or interest of, in and to said land in the complaint described, and that the defendant wrongfully withheld the same from him.

From the findings the court drew the conclusions of law that the plaintiff was entitled to recover possession of the said land in dispute, being the undivided one half part or interest of, in and to said lot No. 4, in said block No. 4, in said town of Juneau, against said defendant and all persons claiming under him, and to recover a judgment for said possession and for costs.

The appellant now contends that, under section 318 of Hill's Oregon Code, (which by the act of May 17, 1884 — 23 Stat. 84 — was made applicable to Alaska, and which is in the follow-

ing terms: "The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same from him, to his damage such sum as may be therein claimed,") the plaintiff failed to plead the nature of his estate in the property, whether it be in fee, for life or for a term of years.

Without stopping to consider whether the defendant could be heard to again raise a question that had been decided against him on his demurrer to the complaint, we think that the objection is not a sound one. The plaintiff alleged, and the court has found, that for more than nine years prior to April 29, 1891, he and his grantors were the owners by right of prior occupancy and actual possession of the land in dispute.

In the condition of things in Alaska under the act of May 17, 1884, c. 53, 23 Stat. 24, providing a civil government for Alaska, and under the twelfth section of the act of March 3, 1891, c. 561, 26 Stat. 1094, 1100, the only titles that could be held were those arising by reason of possession and continued possession, which might ultimately ripen into a fee simple title under letters patent issued to such prior claimant when Congress might so provide by extending the general land laws or otherwise. *Davenport* v. *Lamb*, 13 Wall. 418.

In *Bennett* v. *Harkrader*, 158 U. S. 441, 447, brought to this court by a writ of error to the District Court of the United States for the District of Alaska, it was said by Mr. Justice Brewer, in disposing of a somewhat similar objection : "Where the complaint alleges that the plaintiff is entitled to the possession of certain described property, which is unlawfully detained by the defendant, and the possession of which the plaintiff prays to recover, a general verdict for the plaintiff is a finding that he is entitled to the possession of all the property described in the complaint. Again, in this action, brought under a special statute of the United States in support of an adverse claim, but one estate is involved in the controversy. No title in fee is or can be established. That remains in the United States, and the only question presented is the priority of right to pur-

chase the fee. Hence the inapplicability of a statute regulating generally actions for the recovery of real estate, in which actions different kinds of title may be sufficient to sustain the right of recovery. It would be purely surplusage to find in terms a priority of the right to purchase when that is the only question which can be litigated in such statutory action."

This principle applies more strongly to the present case, in which the real nature of the plaintiff's estate in the property is truly alleged as ownership by right of prior occupancy and actual possession, and was so found to be by the trial court.

The same view of the nature of a title to a lot in a townsite in Alaska, under these acts of Congress, was expressed by the District Court of the United States for the District of Alaska, in the case of *Carroll* v. *Price,* 81 Fed. Rep. 137. As, then, the only kind of estate that could be held was that of possession, it was sufficient for the plaintiff to allege that his was of that nature.

It is next contended on behalf of the plaintiff in error that, even if the complaint should be held otherwise sufficient, yet the action must fail because coming within section 3524, Hill's Oregon Code, which is as follows: " In an action to recover the possession of any land, tenement or other real property, where the entry is forcible, or where the possession is unlawfully held by force, the merits of the title shall not be inquired into ; and three years' quiet possession of the premises immediately preceding the commencement of such action by the party in possession, or those under whom he holds, may be pleaded in bar thereof, unless the estate of such party is ended."

It is argued that, as the complaint was filed in the court below May 25, 1896, more than five years from the day of entry alleged in the complaint, and as the defendant pleaded in bar of the action the three years' quiet possession of the premises immediately preceding its commencement, the defendant is entitled to a judgment of reversal.

If this were indeed an action in forcible entry and detainer, and as the complaint shows on its face that the defendant's possession was longer than three years prior to the commence-

ment of the action, then the defendant was entitled to have had his demurrer sustained. But he did not stand on his demurrer, but availed himself of the court's leave to answer; and hence it might well be questioned whether it was competent for him to again raise in his answer a question already ruled against him under his demurrer.

But this it is unnecessary to consider, because it is altogether clear that, on the complaint and the facts found, this was not an action for a forcible entry and detainer, under the section of the Oregon Code pleaded by the defendant, but was an action of ejectment to which the statute pleaded did not apply.

The judgment of the District Court of the United States for the District of Alaska is

*Affirmed.*