## UNITED STATES v. ONE REO SEDAN.
### No. 4091.

District Court, D. Massachusetts.

March 27, 1930.

Frederick H. Tarr, U. S. Atty., and Ellen L. Buckley, Asst. U. S. Atty., both of Boston, Mass.

Shorey & Tiffin, of Boston, Mass., for claimant.

BREWSTER, District Judge.

These are proceedings on information to forfeit under 19 USCA §§ 482 and 483 (Rev. St. §§ 3061, 3062), a Reo sedan which had been used by one James F. McDonough in the transportation of intoxicating liquors, claimed to have been illegally imported into the United States. The matter is presented upon the claim of the C. I. T. Corporation, the holder of a conditional contract of sale which, by reason of defaults on the part of McDonough, the conditional vendee, entitled the corporation to the immediate possession of the car. Trial by jury was duly waived.

The evidence established the following facts: On the 15th day of June, 1929, McDonough was operating the automobile in the town of Randolph, in this district, when he was stopped by the chief of police of that town, who searched the car and found therein 35 jugs of liquor marked "Hulstkamp Gin-Rotterdam" and 13 quarts of liquor marked "Extra Special, Old Highland Whiskey. John Walker & Sons, Kilmarnock, (Registered) Produce of Scotland." The officer arrested McDonough and seized the liquor. He did not, however, seize the car, but turned it back to McDonough, and then notified United States Customs Agent McKenna of the arrest and seizure of the liquor. McKenna went to Randolph, saw the packages taken from the car and the labels thereon, and took samples of the gin and of the whisky.

On June 18, 1929, the car was discovered in Boston near the Commonwealth Pier, and McKenna with another agent seized the car. At the time of this seizure, the car was searched, but no liquors were found in or upon it. McDonough succeeded in avoiding arrest. It was conceded, and I find, that the claimant had no knowledge of the unlawful purposes for which the car was being used.

Shortly after the seizure, these forfeiture proceedings were instituted, and, as above noted, if the proceedings are to be justified at all, they must be justified by the provisions

of said sections 482 and 483. The pertinent provisions of these sections are as follows:

Section 482: "Any of the officers or persons authorized to board or search vessels may stop, search, and examine, * * * any vehicle, * * * on which * * * he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle * * *; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, * * * which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, * * * he shall seize and secure the same for trial."

Section 483: "Every such vehicle * * * or other motive power used in conveying, * * * such * * * merchandise, * * * and all means of concealment, * * * shall be subject to seizure and forfeiture. * * * "

■ Before taking up the real question involved, I will dispose of the issue of fact raised by the pleadings, namely, whether the intoxicating liquors found on the automobile by the Randolph police officer were of foreign origin. There was evidence tending to show that McDonough was known to the United States customs officers as one who had achieved considerable notoriety as a rum runner; that on June 10, 1929, there arrived at Boston a Norwegian vessel which was tied up along or near the Commonwealth Pier; that McDonough had been seen aboard the vessel, and for several days had been seen in the vicinity of the pier; that there was on board the vessel gin and whisky of the kinds taken from McDonough's car, several cases of which the master was unable to account for when the customs inspector went aboard. Furthermore, the government chemist testified that, upon analysis, the liquor corresponded with Holland gin and Scotch whisky which were imported into the United States prior to the Eighteenth Amendment, and McDonough confessed to the officer who arrested him that he had taken the liquor from a ship. While he did not disclose the identity of the vessel, it is difficult to escape the inference that the vessel, from which he obtained the liquor, was the Norwegian vessel to which reference has already been made. I find, therefore, on the evidence, that the liquors found in the car by the police officer of Randolph had been unlawfully imported.

■ We come now to the more difficult question, which is whether said sections 482 and 483 authorize a forfeiture of the vehicle on the facts of the case. I fail to find any authority in section 482 for the seizure of the car, because the provisions of that section only authorize a seizure in case the officer shall find on or about the vehicle merchandise which he has reasonable cause to believe has been unlawfully introduced into the United States. In the case at bar, the officer found no such merchandise on the vehicle at the time he searched and seized it on June 18, 1929. Although he was in possession of sufficient information to justify a search, having found no liquor in the car, he had no right under this section to proceed with the seizure. United States v. One Chevrolet Sedan (D. C.) 33 F.(2d) 217.

But whether the seizure is lawful or unlawful under that section, the claimant cannot prevail if it can be found as a matter of law that the car, on the facts here disclosed, is subject to seizure and forfeiture under any other statutory provision. Wood v. United States, 16 Pet. 342, 10 L. Ed. 987; Taylor et al. v. United States, 3 How. 197, 11 L. Ed. 559.

It is said in Wood v. United States, supra, at page 359 of 16 Pet., 10 L. Ed. 987, that "it is of no consequence whatsoever, what were the original grounds of the seizure, whether they were well-founded or not, if, in point of fact, the goods are by law subjected to forfeiture; for the United States are not bound down, by the acts of the seizors, to the causes which influenced them in making the seizure, nor by any irregularity on their part in conducting it, if, in point of fact, the seizure can now be maintained, as founded upon an actual forfeiture thereof, at the time of the seizure. * * * "

■ If the state officers had seized and held the car and turned it over to the federal officers so that there was a continuous seizure, it is settled that the government could have adopted such seizure, whether lawful or unlawful, and in such event undoubtedly the car would have been subject to forfeiture under section 483. Dodge v. United States, 272 U. S. 530, 47 S. Ct. 191, 71 L. Ed. 392; United States v. Story (C. C. A.) 294 F. 517.

■ But this was not done. No seizure of the car was made until three days later, when it was taken by the federal officers, and when it was not actually being used in the smug-

gling of intoxicating liquors. Therefore the question comes down to this, whether the provisions of section 483 are intended to reach any vehicle which had been, some time in the past, used by an offender in introducing into the United States merchandise contrary to law. The language used in expressing the intent of Congress would hardly warrant the court in thus extending the scope of the act. The vehicles that are subject to forfeiture are described as "such" vehicles, and Judge Hale, in United States v. One Black Horse (D. C.) 129 F. 167, 170, made this observation: "Section 3062 [19 USCA § 483] provides that 'such vehicle,' namely, a vehicle which has been found by an officer to be in use in transporting or conveying smuggled property, shall be liable to seizure and forfeiture." The section would have an entirely different import if we were to define "such vehicle" as a vehicle which has been found by an officer to have been used at some time in the past in transporting or conveying smuggled property.

Of course, as Judge Hale so well states in this opinion, these statutes "must be construed fairly and reasonably, to arrive at the intention of the lawmaking body."

What was that intention? Is there anything in this section, or in section 482, which can be said to reveal an intent to subject to seizure and forfeiture a vehicle because at some earlier period, however remote, it had been used in connection with illegal importation? We have to keep in mind that the purpose of these statutes was to enable the customs officers to discover any merchandise which they suspected was being imported without payment of the duties which Congress had exacted thereon. There are other provisions of law, relating to import duties, which declare that all merchandise brought into the country contrary to law shall be forfeited. 19 USCA § 497. It will be noted that this statute does not call for forfeiture of the vehicle used in the unlawful introduction of merchandise into the country. It would seem that the purposes of sections 482 and 483 were to prevent the unlawful importation rather than to punish the offense after it had been committed, and to that end the proper officers have been given power, when they suspect that merchandise is being unlawfully introduced into the United States, to stop a vehicle, search and examine it, to see if there is any merchandise therein which is being unlawfully imported. If they find such merchandise, then under this section not only the merchandise discovered but the vehicle upon or in which it is discovered is subject to forfeiture. But if, as a result of such search and examination, it turns out that the suspected offense has not been committed, then I take it that is an end to the matter so far as these sections are concerned. It does not seem reasonable to me that Congress intended that a vehicle should be searched upon mere suspicion, and, if no dutiable merchandise is found thereon, to authorize a seizure of the same, and then permit the government to work a forfeiture by showing that, at some time previously, contraband merchandise had been found upon the vehicle.

If such a forfeiture can be predicated upon a seizure made within three days after the offense, it would follow that it could be just as well based upon a seizure made within a much longer time. If we apply the doctrine of some of the earlier cases that the title of the government relates back to the time of the commission of the offense (Clark v. Protection Ins. Co., Fed. Cas. No. 2832; United States v. The Reindeer, Fed. Cas. No. 16144; United States v. Grundy, 3 Cranch, 338, 2 L. Ed. 459; Gelston v. Hoyt, 3 Wheat. 246, 4 L. Ed. 381) and thereby cuts out the rights of innocent purchasers for value (United States v. 1,960 Bags of Coffee, 8 Cranch. 398, 3 L. Ed. 602) such purchasers would always experience much uncertainty in buying automobiles that had been previously in use.

I have examined many cases arising under these sections and Rev. St. §§ 3061 and 3062, and I have yet to find a case which upheld the right of the government to work a forfeiture of a vehicle upon which no merchandise was found. I feel that to hold the Reo sedan subject to forfeiture under section 483 is to press the scope of the act beyond its legitimate boundaries.

We are not here proceeding against the merchandise which was imported in violation of the customs laws. Such merchandise is, under section 497, subject to forfeiture wherever and whenever found. It does not necessarily follow, however, that the vehicle used as an instrumentality in the commission of the offense is likewise subject to forfeiture wherever and whenever found. As I view the matter, the instrumentality can be forfeited only when, at the time of the seizure, it is actually being used in the unlawful importation. These sections, 482 and 483, are the only sections dealing with the forfeiture of vehicles for an offense against the tariff

laws. These sections are still in force, notwithstanding the National Prohibition Act. United States v. Cahill (C. C. A.) 13 F.(2d) 83. And the government may invoke these sections even though the merchandise unlawfully imported was intoxicating liquor, but, in order that the government prevail in such proceedings, it must bring its case wholly within the terms of that statute.

It appears to me to be clear, as I have above intimated, that the only vehicles that are subject to forfeiture are those which the officer is authorized to seize under section 482, and, since his authority to seize is limited to those upon which merchandise is found, the Reo sedan did not come within the definition of "every such vehicle," and therefore the information cannot be sustained.

It was conceded by the government that the claimant was the owner of the legal title to the car, and that any order for a return should direct that the car be returned to the claimant. I therefore dismiss the information and direct that the automobile be turned over to the claimant.

The claimant has filed certain requests for rulings, all of which, except the fifth, are inconsistent with the above opinion and are denied. The fifth request for a ruling that the government has not maintained its libel is granted.

The government has also filed requests for findings of fact and rulings of law. Of these requests, those numbered 13, 14, 15, 16, and 18 are inconsistent with my opinion and are denied. The remaining requests are granted.