**UNITED STATES v. ONE REO COUPÉ AUTOMOBILE.**

No. 4216.

District Court, D. Massachusetts.

Jan. 13, 1931.

Frederick H. Tarr, U. S. Atty., and Ellen L. Buckley, Asst. U. S. Atty., both of Boston, Mass.

Abbott & Carroll, of Boston, Mass., for claimant Broyer.

Shorey & Tiffin, of Boston, Mass., for claimant C. I. T. Corporation.

BREWSTER, District Judge.

On an information the government seeks a forfeiture under title 19, U. S. Code, §§ 482 and 483, 19 USCA §§ 482, 483 (R. S. §§ 3061, 3062), of a Reo coupé.

■ The C. I. T. Corporation, claiming to be the owner of the legal title to the automobile, has filed an intervening petition and claim and asks to have the libel dismissed. It contends that upon the facts of the case forfeiture proceeding can only be had under section 26 of title 2 of the National Prohibition Act (27 USCA § 40).

I find the facts to be as follows:

The coupé had been sold to one Louis Broyer under a contract of conditional sale, reserving title in the vendor until the purchase price was fully paid. The vendor's interest in the contract had been duly assigned to the claimant, which had no knowledge that Broyer was using the automobile for unlawful purposes.

About 2 o'clock a. m. on March 24, 1930, a police officer in the town of Newburyport

saw trucks coming from the wharf of the Yacht Club on the Merrimac river, and, going down to the wharf to see what was going on, he heard a motorboat in the distance and found a number of bags and kegs of liquor. The officer saw Broyer at the wharf and had some conversation with him, and his suspicions were excited by Broyer's conduct. This liquor, which comprised 872 cases and 100 kegs of whisky, was taken to the police station by the Newburyport police officers.

Later, on the same day, Customs Officers McKenna and Finnigan, in company with the local customs inspectors, having been fully informed as to all that had happened, went to the garage of Broyer, who was engaged in the trucking business, and discovered in the garage several bags of whisky bearing the same label as those taken from the wharf. Broyer was not in when they first arrived at his place of business, but shortly after he drove up in the Reo coupé involved in these proceedings. He left his car standing outside and, entering the garage, engaged in conversation with the officers. He admitted that the whisky found in the garage was his. The appearance of the car with the other facts and knowledge in the possession of the officers afforded reasonable grounds to suspect that there was liquor in the car, and after Broyer had produced the keys so that they could do so, they searched the car and found several bags of liquor of the same kind and bearing the same lot number as that discovered at the wharf by the local police. The car and the liquor were seized. Broyer was prosecuted under the Tariff Act of 1922 (U. S. Code, title 19, § 497 [19 USCA § 497]), which imposes a penalty upon any person fraudulently or knowingly importing or bringing into the United States, or assisting in so doing, any merchandise, contrary to law, or who receives, conceals, buys, sells, or in any manner facilitates the transportation, or concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

The liquor on the car was seized under the same section and forfeited thereunder, and subsequently these proceedings for the forfeiture of the car were brought under sections 482 and 483.

■ Upon the question of foreign origin of the liquor, I find that the cases which were taken from the wharf and from the Broyer automobile contained liquor which, according to the labels, was the product of the Distill-

ers Corporation, Limited, of Montreal, Canada. The special exciseman of the National Revenue Department of Canada, McNally, testified that he was in charge of this distillery for the government; that the labels, packages, wrappings, lot number, and stamps were such as were used by the Distillers Corporation, Limited, in the preparation of its whisky for export; that these all appeared to him to be genuine; that the liquor was Canadian Bourbon whisky, not illicitly distilled, and in his opinion the liquor in the bottles was Indian Hill whisky, produced at the Distillers Corporation, Limited, at its distillery in Montreal.

On the evidence I find that this whisky was of foreign origin, and that it was unlawfully introduced into the United States, no permit having been issued.

The facts of this case are on all fours with those in United States v. Cahill, 13 F. (2d) 83, 85, decided by the Circuit Court of Appeals for this circuit in 1926, and that case controls unless the results there reached conflict with decisions subsequently rendered by the Supreme Court in the cases of Commercial Credit Co. v. United States, 276 U. S. 226, 48 S. Ct. 232, 72 L. Ed. 541, and Richbourg Motor Co. v. United States, 281 U. S. 528, 50 S. Ct. 385, 388, 74 L. Ed. 1016. In United States v. Cahill, supra, the court held that Congress could, and in the Tariff Act of 1922 did, impose a tax upon the importation of intoxicating liquors, the importation of which was forbidden except on permit, and stated their conclusion that the provisions of sections 482 and 483 were not directly in conflict with the provisions of the Federal Prohibition Act in the following language:

"Sections 3061 [482] and 3062 [483] contemplate the seizure and forfeiture of a vehicle on which goods are found that have been smuggled, without regard to their being transported thereon; it is because the vehicle is being used as a 'means of concealment' of smuggled goods; while section 26 contemplates that the vehicle shall be seized and forfeited for being used by a person in the illegal act of transporting liquor. This being so, we do not regard the provisions of sections 3061 and 3062 as in direct conflict with the provisions of section 26 of the Prohibition Act, and especially is this true as applied to the facts in this case, for it is not found that the officers discovered any person in the act of transporting liquor in the automobile, and there was no evidence from which such a finding could be made."

The claimant contends in the case at bar that, in view of the recent pronouncements of the Supreme Court, the above statement cannot be accepted as an accurate statement of the law. It argues in effect that there can be no forfeiture of an automobile, or other vehicle, except under section 26 of title 2 of the National Prohibition Act, if it appears that the vehicle had been used as an instrumentality in the transportation of intoxicating liquors even though such transportation was merely incidental to the graver offense of smuggling. I have given careful consideration to the gradual development of the views of the Supreme Court respecting the rights of the government to work forfeitures of automobiles under the provisions of statutes other than those contained in section 26 of title 2 of the National Prohibition Act. It must be noted at the outset that none of these cases deal with the rights of the government to proceed under sections 482 and 483. They all deal with a provision of the internal revenue laws relating to the forfeiture of any conveyances in which goods subject to an internal revenue tax are removed, deposited, or concealed with intent to defraud the United States of such tax. U. S. Code, title 26, § 1181, 26 USCA § 1181 (R. S. § 3450).

The first case involving forfeiture proceedings under these provisions was United States v. One Ford Coupé Automobile, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025. In that case it was distinctly pointed out that the element of transportation was not involved since the libel made no mention of removal of the goods, the charge being only that the automobile had been used to deposit or conceal. It was there held that section 3450 was not directly in conflict with the provisions of the National Prohibition Act and was, therefore, still applicable and could be invoked by the government upon the facts of that case.

The next case was Port Gardner Investment Co. v. United States, 272 U. S. 564, 47 S. Ct. 165, 71 L. Ed. 412, and here the seizure was by federal agents. The driver was convicted under the Federal Prohibition Act for the unlawful transportation of liquor, and this prosecution was held to constitute an election to proceed under the Prohibition Act and precluded the government from resorting to section 3450 for a forfeiture.

In Commercial Credit Co. v. United States, supra, the seizure was made by customs inspectors. The person in charge of the automobile was proceeded against under the Prohibition Act. He was charged originally with the offense of unlawful possession and unlawful transportation. He pleaded guilty only to unlawful possession and was never convicted of unlawful transportation. Nevertheless, the court held that the possession was merely incidental to the transportation and that the government could not proceed under the Internal Revenue Law; the court remarking that section 26 "governs the disposition of the car where the person in charge of the vehicle is convicted of the unlawful possession incidental to the transportation, as well as where he is convicted of the unlawful transportation itself."

In the latest case of Richbourg Motor Co. v. United States, supra, the court advances another step in limiting the government to proceedings under the Prohibition Act when the forfeiture of an automobile is sought.

In this case there was a search by federal agents and the person operating the automobile was arrested and arraigned before a United States commissioner on a charge of illegal transportation of intoxicating liquors, but these charges were dropped and indictments were procured under section 3450 upon which the operator was convicted.

By referring to the opinions of the lower courts in Richbourg Motor Co. v. United States (C. C. A.) 34 F.(2d) 38, and Davies Motors, Inc., v. United States (C. C. A.) 35 F.(2d) 928, we find that in both of these cases the automobiles were clearly being used in the violation of the Prohibition Act. There is nothing in these cases to indicate that the intoxicating liquor found on the cars had been unlawfully introduced into the United States, nor was there any evidence of removal, deposit, or concealment, with intent to defraud the government, of tax-unpaid commodities except as such concealment is necessarily involved in any unlawful transportation of intoxicating liquors. As was said by the Supreme Court in Richbourg Motor Co. v. United States, supra, "there can be few cases of illegal transportation which do not involve the concealment of nontax-paid liquor."

It is obvious that in the later cases the court went directly to the substance of the offense that had been committed with the use of the automobile and paid little regard to the form of the proceedings which the government had seen fit to institute against the person in charge of the vehicle.

It should be noted in passing that in Richbourg Motor Co. v. United States, supra, Mr. Justice Stone at the outset of his opinion states that the question presented is

whether "proceedings for the forfeiture of a vehicle *seized under section 26 of the National Prohibition Act, as one used for unlawful transportation of intoxicating liquor*, but, where there has been no prosecution for that offense, must be had under that section. * * *" (Italics supplied.)

Clearly, then, the whole opinion proceeds upon the assumption that the vehicle was seized under section 26 of title 2 of the National Prohibition Act as one used for the unlawful transportation of intoxicating liquors.

Upon facts similar to those confronting the court in the Richbourg or Davies Cases, I would have no hesitation in saying that the government could not maintain forfeiture proceedings under section 483 because there was nothing to indicate that there had been any violation of any customs laws.

The same, I think, is true in United States v. Ford Coupé Automobile (D. C.) 43 F.(2d) 212, 214, which was a libel brought under section 483 and upon which case the claimant places reliance. I concur in the conclusions reached in that case because it appeared that the driver of the automobile was indicted for the unlawful transportation of intoxicating liquors in violation of the National Prohibition Act. There was every indication that the car was seized by officers under the National Prohibition Act. This fact was controlling in the mind of the learned judge who, in the course of his opinion, said that if he had not been informed "that the arrest of the defendant was made in the act of transporting, as alleged in the * * * indictment, and the case stood solely upon the libel under sections 3061 and 3062," he would not have been able to decide that the libel should be dismissed.

In the case at bar we have to deal with facts which are clearly distinguishable from those before the court in Richbourg Motor Co. v. United States, supra, or in the case against the Ford coupé, in the Southern District of Florida, above referred to. Here we are dealing with a case of customs officers whose duty it was to prevent smuggling of merchandise into the United States, and who in the discharge of their duty, and armed with authority conferred upon them by the tariff law (U. S. Code, title 19, § 481 [19 USCA § 481]), searched a vehicle on which they suspected there was merchandise which had been introduced into the United States in a manner contrary to law and found thereon such merchandise. The person in charge of the vehicle was charged with the offense of facilitating the smuggling of goods in violation of customs laws. There is no suggestion that the officers discovered Broyer in the act of transporting nor did they search and seize his vehicle as one used for the unlawful transportation of intoxicating liquors. Of course, it is impossible to exclude the idea that the vehicle had been used in the transportation of the liquor. It is impossible to conceive of any case of smuggling where the element of transportation would not have been at some time present, but here the substantive crime was a violation of the customs laws. The acts of Broyer undoubtedly offended against the National Prohibition Act which makes it unlawful to import intoxicating liquors. But that of itself is not enough to bring the provisions of sections 482 and 483 in direct conflict with section 26 of title 2 of the National Prohibition Act. It may also be noted that these sections were not repealed by the tariff laws of 1922 while many other sections of the earlier customs laws were.

If the contention of the claimant is to be upheld, it inevitably follows that all the provisions of the customs laws relating to the forfeiture of vehicles are null and of no effect if the smuggled merchandise consists of intoxicating liquors. In United States v. One Ford Coupé Automobile, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025, there was held to be no direct conflict between section 26 and section 3450 because the court felt that upon the record before it, it could find that the offense committed did not necessarily involve transportation, although it must have been apparent that at some stage of the offense the element of transportation had been involved.

In an earlier case arising under sections 482, 483, I said that: "These sections, 482 and 483, are the only sections dealing with the forfeiture of vehicles for an offense against the tariff laws. These sections are still in force, notwithstanding the National Prohibition Act. * * * And the government may invoke these sections even though the merchandise unlawfully imported was intoxicating liquor, but, in order that the government prevail in such proceedings, it must bring its case wholly within the terms of that statute." United States v. One Reo Sedan (D. C.) 39 F.(2d) 120, 122.

I find nothing in later decisions of the Supreme Court which leads me to modify this statement. I still think it to be possible for the government to obtain forfeiture of a vehicle used in the smuggling of dutiable mer-

chandise even if such merchandise is intoxicating liquor, but the smuggling of the liquor, and not the transportation of it, must be the real offense, and the seizure must be made under the customs laws as a vehicle upon which is found smuggled merchandise, and the offender must be prosecuted for violating the customs laws rather than the prohibition laws.

This course of procedure was followed in the instant case. The officers, on the facts here presented, were not subject to the injunction that prohibition agents discovering one in the act of transportation must heed the "plain and direct commands of section 26 to proceed against the vehicle as there directed."

These views find support in cases in this and other jurisdictions dealing with the forfeiture of vessels carrying cargoes of intoxicating liquors. August Alksne v. United States (C. C. A.) 39 F.(2d) 62, certiorari denied, 281 U. S. 768, 50 S. Ct. 467, 74 L. Ed. 1175; The Pilot (C. C. A.) 43 F.(2d) 491.

Apparently one of the cogent reasons for holding the government to forfeiture proceedings under the National Prohibition Act is that the rights of innocent owners and lienors are saved by the terms of section 26; but the force of this argument is somewhat weakened when we remember that there are provisions of the tariff laws which afford the innocent owner an opportunity to secure a remittance or mitigation of the forfeiture. U. S. Code, title 19, § 532 (19 USCA § 532).

My conclusion, therefore, is that the government should prevail in these proceedings, and a decree of forfeiture may be entered.