**THE RETHALULEW, OFFICIAL NO. 227860.**

**DANIELS v. UNITED STATES.**

No. 6352.

Circuit Court of Appeals, Ninth Circuit.

Aug. 4, 1931.

Otto Christensen, of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Ignatius F. Parker and Louis J. Somers, Asst. U. S. Attys., all of Los Angeles, Cal.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

The libelant charged respondent vessel with having engaged in a trade other than that for which she was licensed, in violation of 46 USCA § 325, Rev. St. § 4377, and with having been fraudulently registered in violation of 46 USCA § 60, Rev. St. § 4189.

Ward Daniels, claimant and appellant, filed an intervening petition and answer denying the allegations of the libel and alleging that he was the owner of the respondent vessel by purchase thereof from the registered owner, James H. Curwin, on December 5, 1928, for the sum of $9,542; that at the time he purchased said vessel he did not know that it had violated any law or any of the conditions of its enrollment or license or had committed any of the acts alleged in the libel, or that the enrolled owner, James H. Curwin, or the enrolled master, John McCluskey, had made or executed any false oath

for the purpose of obtaining a license for said vessel. The matter was heard by a commissioner in pursuance of stipulation. The commissioner made findings and reported his conclusions and recommendations to the court, to the effect that the charges of the libel hereinbefore stated were true, and holding that the vessel should be forfeited therefor. Claimant filed exceptions to this report, which were heard and overruled by the court on September 19, 1930.

■ It appears from the evidence that the Rethalulew is an American vessel of 16 tons net, powered with three liberty motors. She was registered and licensed on July 30, 1928, at Los Angeles, Cal., to James H. Curwin as owner, and John McCluskey, master. The license provided that she should be "used and employed exclusively as a pleasure vessel, and designed as a model of naval architecture," and should not "while this license continues in force, transport merchandise or carry passengers for pay, or engage in any unlawful trade, nor in any way violate the revenue laws of the United States," and should "comply with the laws in all other respects."

On September 30, 1930, the respondent vessel was engaged in transporting intoxicating liquor from the schooner Przemysl to the L'Aquila, another vessel nearby, both vessels lying some miles off the coast of Southern California, for the purpose of smuggling intoxicating liquor into the United States. It is not questioned that the evidence is sufficient to establish that the vessels were so engaged, if the testimony of Kruger and Johnson, members of the crew of the Przemysl, who testified by deposition, is to be believed. Appellant's principal contention is that these two witnesses are unworthy of credit, although their testimony, corroborated in some salient features by testimony given before the commissioner, was evidently accepted by him and by the trial court as truthful, and that this court should reject such testimony as unworthy of belief and for that reason reverse the decision of the trial court.

With reference to the transportation of liquor by the respondent vessel on the 30th of September, the two sailors testified by deposition as to the presence and activities of the Rethalulew at the time and place above referred to, and their testimony is corroborated by the testimony given before the commissioner, by the boatswain's mate and the master machinist's mate on Coast Guard boat No. 253, to the effect that on September 30, 1928, they sighted a speedboat near two "big boats," both of the latter being identified by the boatswain's mate, from reading the names visible thereon, on nearer view, as the Przemysl and L'Aquila, the motor machinist's mate identifying one of them, from reading the name, as the Przemysl, but failing to notice the name of the other big boat; that this speedboat came out from behind the vessel identified by both witnesses, and by the deposition of the sailors, as the Przemysl, and then put about and fled at high speed, using both of the larger vessels as a protection and screen; and that the cutter pursued the fleeing speedboat, and, after clearing the two larger vessels, opened fire on the speedboat with a one-pounder, and attempted to overhaul her. The motor machinist's mate testified that the speedboat was gray in color, and was about 65 feet long, and that they approached within 500 yards of the speedboat before it started its flight; that they chased the speedboat about fifteen minutes, when they burned out a bearing and had to stop, and that he had never before chased so speedy a boat. From a logbook entry of the Coast Guard boat, dated September 30, 1928, covering the incidents of the sighting and pursuit of the speedboat, it appeared that it made off in a westerly direction at about thirty miles per hour. From the testimony of these witnesses it appeared that visibility was not good, so that the crew of the Coast Guard vessel could not positively identify the speedboat by name, but the descriptions given by them, as regards the dimensions, color, and speed of the boat, correspond with those of the respondent vessel. There is no evidence to contradict this testimony, and appellant, in his statement of the evidence, assumes it to be a fact that the Przemysl and the L'Aquila were, and had been for some weeks, lying off the coast of Southern California engaged in smuggling their cargo of liquor into the United States.

It appears from the record that the commissioner inspected the respondent vessel, and he was evidently satisfied that she was capable of carrying out the mission assigned to her by the witnesses. There was no evidence to contradict the testimony of these witnesses as to the occurrences on September 30. The claim of appellant is that the testimony of the two sailors on the Przemysl is so completely contradicted in other particulars to which they testified that their testimony as to the activities of respondent vessel on September 30 should be disregarded as unworthy of credit, and that without their testimony the corroborating evidence alone is insufficient to establish the identity of the

respondent vessel as the offending speedboat. It is true that these two sailors testified to a large number of visits made by this speedboat to the above-mentioned vessels lying off the coast of Southern California during the months of August and September. The evidence which tended to contradict them was to the general effect that the respondent vessel was not fully completed before the 1st of September. It is therefore argued that the testimony of the two sailors is for that reason willfully false. It would be unnecessary and unprofitable to analyze this testimony. It is sufficient to say that we see no reason for disregarding their testimony and for accepting the testimony of witnesses who were evidently disbelieved by the trial court.

Appellant further contends that the findings and decree were nonjudicial acts and void. This contention is based on a written stipulation, dated November 3, 1930, between the parties, to the effect that District Judge Paul J. McCormick, who tried the cause, signed the findings and decree herein while he was in the city of New York. We are in effect asked, by appellant, to take judicial notice of the fact that Judge McCormick is a member of the National Commission on Law Observance and Enforcement, and that in all probability he was in New York, as a member of that commission, when he signed the findings and decree; and, by appellee, we are requested to take judicial notice of an order in our files, by the Chief Justice of the Supreme Court, assigning Judge McCormick to sit in the United States District Court for the Southern District of New York during the period beginning October 1st and ending December 31, 1930. This stipulation was not submitted to the trial court. No ruling of the trial court was invoked thereon, and no ruling of the trial court was based thereon. Such a stipulation is no proper part of the record (Malony v. Adsit, 175 U. S. 281, 287, 20 S. Ct. 115, 44 L. Ed. 163; Metropolitan R. Co. v. Dist. of Columbia, 195 U. S. 322, 332, 25 S. Ct. 28, 49 L. Ed. 219). Moreover, this is an appeal from a decree. Our jurisdiction, which is invoked by appellant, is predicated upon the existence of a final decree. That the decree,

entered October 27, 1930, is the final decree of the court is asserted by appellant in his petition for the allowance of the appeal. If there is no final decree to be appealed from, this appeal should be dismissed. Appellant does not wish or request that his appeal be dismissed; on the contrary, he prays for a reversal of the decree. Under these circumstances he cannot assert here that the decree from which he appeals is void or that it is not a decree of the court.

We hold further that the evidence introduced in behalf of claimant, upon which he seeks to avoid forfeiture of respondent vessel because of lack of knowledge on his part that it had been engaged in violation of law, cannot avail him. It is unnecessary for us to refer to the evidence showing the somewhat unusual circumstances under which the vessel was purchased and paid for, or to the failure of claimant to make the inquiries touching the vessel's antecedents, which in the circumstances under which the sale and purchase was made should have suggested its misconduct to a person having appellant's business experience; nor need we comment on the failure of claimant either to produce, or to excuse the nonproduction of material absent witnesses manifestly having knowledge of the whereabouts or activities of respondent vessel during the period covered by the charges set forth in the libel; for it is well settled that, upon an adjudication of violation of statutes of the nature of those upon which the charges herein are based, forfeiture of the offending res relates back to the time of the offense and cuts out all intervening rights or claims in the property affected, even rights acquired in good faith and for value. United States v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch (12 U. S.) 398, 403, 3 L. Ed. 602; United States v. Stowell, 133 U. S. 1, 17, 10 S. Ct. 244, 33 L. Ed. 555; Goldsmith, Jr-Grant Co. v. United States, 254 U. S. 505, 510, 41 S. Ct. 189, 65 L. Ed. 376; United States v. 26 Cases of Intoxicating Liquors (D. C.) 287 F. 540, 541; United States v. One Reo Sedan (D. C.) 39 F.(2d) 120, 122.

The decree appealed from is therefore affirmed.